UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| P & V ENTERPRISES, FRIENDLY VALLEY EQUESTRIAN CONDO VIEW HOMES, INC., and SCC ACQUISITIONS, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS and LIEUTENANT GENERAL CARL A. STROCK, COMMANDER AND CHIEF OF ENGINEERS, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil No.: 05-01579 (RBW) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY
NATIONAL WILDLIFE FEDERATION AND SIERRA CLUB**

The National Wildlife Federation and Sierra Club (collectively, "Movants") respectfully

submit this memorandum in support of their motion to intervene as party defendants in this

action.

**INTRODUCTION**

This proceeding involves an attempt by P & V Enterprises, Friendly Valley Equestrian

Condo View Homes, Inc. and SCC Acquisition, Inc. ("Plaintiffs") to substantially weaken the

scope of Clean Water Act protections for a variety of waters with significant ecological and

hydrological links to and impacts on our nation's waters.  In 1986, defendants United States

Army Corps of Engineers ("Corps") promulgated regulations in accordance with Congress's

wishes that protections be broadly given to waters of the United States.  Definition of Waters of

the United States, 51 Fed. Reg. 41,206, 41,250 (Nov. 13, 1986) (codified at 33 C.F.R. § 328.3).

As part of those regulations, the Corps promulgated rules that allow it to protect intrastate

waters, the use, degradation or destruction of which could affect interstate or foreign commerce. 33 C.F.R § 328.3(a)(3) (hereinafter "Section (a)(3)"). Included in these waters are many intrastate lakes, rivers, streams, wetlands, prairie potholes, playa lakes and natural ponds. *See id.*

Many of these waters protected under Section (a)(3) provide important water quality functions, such as filtering pollutants, flood control, and groundwater recharge. *See, e.g.*, Ralph W. Tiner et al., U.S. Dep't of Interior, Fish and Wildlife Service, *Geographically Isolated Wetlands: A Preliminary Assessment of their Characteristics and Status in the Selected Areas of the United States* Sec.2, 3-6 (June 2002), *available at* http://www.fws.gov/nwi/Pubs_Reports/isolated/ isolated_no_images2.pdf. They also provide some of the richest biodiversity and most important habitat for aquatic and interrelated species, such as fish, amphibians, waterfowl and various other birds like woodpeckers and plovers, and mammals like mink, deer, and fox. *See id.* at Sec.2, 3-31. Many of the species dependent on these waters are rare, threatened, or endangered. *See id.*

Plaintiff in this case seeks to have that important rule set aside and open up all of the waters protected under Section (a)(3) to federally unregulated pollution and destruction. (Compl. at ¶¶ 1-4 (Prayer for Relief), Ex. A.) If successful, the present litigation would jeopardize the interests of Movants and their members in the use and enjoyment of countless waters of the United States, including gems like the Mojave River. Not only does Plaintiffs' action directly threaten the waters protected by Section (a)(3), but it also threatens the many other waters whose chemical, physical, and biological integrity ultimately depend upon the protection of Section (a)(3) waters. Therefore, Movants request leave to intervene of right pursuant to Federal Rule of Civil Procedure 24(a), or in the alternative, permissively pursuant to Federal Rule of Civil

2

Procedure 24(b). The court should grant Movants' request to Intervene for the reasons stated below.

## BACKGROUND

Our nation's various wetlands, rivers, streams and lakes are among our most precious natural resources. Together, they form a vast and complex web of interlinked waters whereby the hydrological and ecological health of our nation's waters is sustained. Some of the most valuable of these waters, both individually and to the collective health of larger aquatic systems, are those that comprise the vast number of intrastate waters. *See* Tiner et al., *supra*, at Sec.2, 3-31.

Congress passed the Clean Water Act ("CWA") in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act established, among other things, a "national goal that the discharge of pollutants into the navigable waters be eliminated by 1985." 33 U.S.C. § 1251(a)(1). To achieve this ambitious goal, the Act prohibits the discharge of pollutants into navigable waters, broadly defined as "waters of the United States," unless permitted under the Act. 33 U.S.C. §§ 1311(a), 1342, 1344, 1362(7).

Given Congress's goal to control pollution at its source, *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 132-33 (1985) (quoting S. Rep. No. 92-414, at 77, *reprinted in* 1972 U.S.C.C.A.N. 3668, 3742), the Supreme Court has read the term "waters of the United States" to apply to "virtually all bodies of water," *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987), including waters that are not traditionally navigable. *See Riverside Bayview*, 474 U.S. at 133 (stating that "Congress chose to define the waters covered under the Act broadly" and to "regulate at least some waters that would not be deemed 'navigable' under the classical

3

understanding of that term") (citation omitted). As the Supreme Court has recognized, waters that improve water quality by filtering pollutants, waters that protect against flood damage by absorbing and storing flood waters, and waters that provide food and habitat for aquatic species are reasonably protected under the Act. *See Riverside Bayview*, 474 U.S. at 134-35 (1985).

Plaintiffs' action is a purely facial challenge asking this court to vacate the rule allowing the Corps to regulate many important intrastate waters and enjoin the Corps from enforcing the protections of the Act for waters protected under this rule anywhere in the United States. (Compl. ¶¶ 1-4 (Prayer for Relief).)  The regulation at issue provides coverage under the Act to:

> All others waters such as intrastate lakes, river, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce including any such waters:
>
> (i) Which are used or could be used by interstate or foreign travelers for recreational or other purposes; or
>
> (ii) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or
>
> (iii) Which are used or could be used for industrial purposes by industries in interstate commerce.

33 C.F.R. § 328.3(a)(3).

Plaintiffs claim that P & V Enterprises ("P & V") and Friendly Valley Equestrian Condo View Homes ("Friendly Valley") own property in San Bernardino County near the City of Barstow, consisting of 8,000 acres of desert land (the "Barstow Property") that it has under contract with Plaintiff SCC Acquisitions, Inc. for the purpose of developing the land.  (Compl. at ¶¶ 3, 4.)  Plaintiffs further contend that the U.S. Army Corps of Engineers has asserted jurisdiction over the Mojave River basin and that this impacts Plaintiffs' potential project by

4

adding regulatory burdens that "may prevent Plaintiffs from achieving what are otherwise legal uses of the Barstow Property and render their project objectives infeasible." (*Id.* ¶ 34.)

However, Plaintiffs have neither asked the Corps for a specific jurisdictional determination for the Barstow Property, nor have they applied for any permit for any project in the Mojave River basin. Plaintiffs do not make any allegations that the Corps has affirmatively asserted CWA jurisdiction over the Barstow Property or any specific project or activity. Plaintiffs merely allege that "[e]nforcement of the Corps' facially invalid regulations at 33 C.F.R. § 328.3(a)(3) directly threaten Plaintiffs' business and/or property interests by unlawfully requiring a permit prior to development of the Barstow Property." (Compl. ¶ 42.)

To support their claim of harm, Plaintiffs rely largely on a January 24, 2001 "Fact Sheet" where the Corps stated that there were possible bases for asserting jurisdiction over the Mojave River under Section (a)(3). The Fact Sheet states that "lakes in the upper watershed [of the Mojave River Basin] support varying degrees of recreation such as boating and fishing;" "Areas of the [Mojave Narrows Park along the Mojave River] adjacent to the river offer more developed picnic areas and an artificial lake stocked for fishing;" "Recreational fishing is supported in all three of the tributary lakes [to the river] however there are no commercial fishery operations;" and, "A fish hatchery operated by the California Dept. of Fish & Game is located along the Mojave River." (Fact Sheet, From Chief, Regulatory Branch, To: District Engineer for approval, Thru: Chief, Office of Counsel (Jan. 24, 2001) (attachment to Ex. A, Compl.).)[1] The Fact Sheet also states that "[p]ortions of the river support perennial flow, while other reaches only flow

---

[1] The Fact Sheet also notes that a commercial nexus may exist because critical habitat has been designated for the southwestern arroyo toad in the vicinity of the Mojave Forks Dam and the Victorville area, and other endangered and threatened species have also been documented in the basin. *Id.*

during significant flood events." *Id.* Plaintiffs state that they received verbal confirmation from the Corps that "the Corps is asserting jurisdiction over the entire length of the Mojave River," though they do not indicate when such communications occurred and with whom they took place. (Compl. ¶¶ 24, 25.)

Despite their discussion of the Barstow Property, Plaintiffs' claim is a facial challenge to Section (a)(3) that does not specifically concern the Barstow Property or the Mojave River. Plaintiffs do not seek relief specific to any property or water body. Instead, they seek to bring a facial challenge to Section (a)(3) and bar its application in all instances, a result that would potentially remove a host of important waters from the CWA's jurisdiction. (Compl. at ¶¶ 1-4 (Prayer for Relief).)

On October 18, 2005, Defendants filed a Motion to Dismiss under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction. (*See* U.S. Army Corps of Engineers, et al., Memorandum in Support of Motion to Dismiss (Oct. 18, 2005).) Plaintiffs responded on October 31, 2005. (*See* Plaintiffs' Opposition to Defendants' Motion to Dismiss (Oct. 31, 2005).) Plaintiffs also filed a Motion to Strike on December 8, 2005, (*see* Plaintiffs' Motion to Strike and Memorandum in Support (Dec. 8, 2005)), which was opposed by Defendants on December 23, 2005 (*see* Defendants' Opposition to Plaintiffs' Motion to Strike (Dec. 23, 2005)). The Defendants have not yet filed an answer.

National Wildlife Federation and Sierra Club do not seek to brief the motions that have been put before the court prior to this motion. Movants' primary interest is participation in further proceedings before this court and in any potential appellate proceedings.

6

## ARGUMENT

## I.    MOVANTS ARE ENTITLED TO INTERVENE OF RIGHT.

Federal Rule of Civil Procedure 24(a) provides that, "[u]pon timely application," a court

shall permit intervention of right where:

> the applicant claims an interest relating to the property or transaction which is the
> subject of the action and the applicant is so situated that the disposition of the
> action may as a practical matter impair or impede the applicant's ability to protect
> that interest, unless the applicant's interest is adequately represented by existing
> parties.

FED. R. CIV. P. 24(a)(2). Thus, this Court must grant intervention of right if: (1) Movants claim

an interest in the subject of the action; (2) their interest may be impaired if they are not permitted

to intervene; (3) their interest may not be adequately represented by existing parties; and (4) their

motion is timely. *See Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d

72, 74 (D.C. Cir. 1988); *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986);

*Nuesse v. Camp*, 385 F.2d 694, 699 (D.C. Cir. 1967). As demonstrated below, Movants satisfy

each of these requirements.

## A.    Movants Claim an Interest Relating to the Subject of this Action.

The requirement that an applicant for intervention of right claim an interest in the subject

of the action is "primarily a practical guide to disposing of lawsuits by involving as many

apparently concerned persons as is compatible with efficiency and due process." *Foster v.

Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (quoting *Nuesse*, 385 F.2d at 700); *accord

Natural Resources Defense Council v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977) ("*NRDC*").

As the D.C. Circuit has observed, "[t]he right of intervention conferred by Rule 24 implements

the basic jurisprudential assumption that the interest of justice is best served when all parties

with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of America*, 473 F.2d 118, 130 (D.C. Cir. 1972).

Thus, this District applies a "liberal standard[] . . . to the determination of whether a proposed intervenor has an interest in a case at all," *Humane Society of the United States v. Clark*, 109 F.R.D. 518, 520 (D. D.C. 1985), and Rule 24(a)'s requirement of an "interest" in the subject of the action "has been interpreted in broad terms." *Natural Resources Defense Council v. U.S. Environmental Protection Agency*, 99 F.R.D. 607, 609 (D.D.C. 1983) (hereinafter "*NRDC v. USEPA*").

Additionally, while the D.C. Circuit has recently indicated that an intevenor need not show standing to intervene as a defendant,[2] a show of standing amply satisfies the interest

---

[2]  While Movants have shown that they have standing, Movants note that, because they are seeking to intervene as *defendants*, standing requirements should not be applied to them. Standing is designed to gauge whether the Court has jurisdiction to hear "Cases" and "Controversies." U.S. Const., Art. III, § 2. It is *Plaintiffs* that have invoked this Court's Article III jurisdiction by asserting a claim for relief, and thus it is *Plaintiffs* who are required to meet the requirements of standing doctrine. Those requirements cannot logically be applied to Movants, who as intervenor-*defendants* would not seek to invoke this Court's Article III jurisdiction with any new claim for relief, but rather would argue *against* the claims for relief already asserted by Plaintiffs. In a recent case, the D.C. Circuit Court explained:

> As to intervention in the district court, requiring standing for an applicant wishing to come in on the side of a plaintiff who has standing runs into the doctrine that Article III is satisfied so long as one party has standing. *Requiring standing of someone who intervenes as a defendant, runs into the doctrine that the standing inquiry is directed at those who invoke the court's jurisdiction.* Still there is no need to dwell on the issues thus raised. With respect to intervention as of right in the district court, the matter of standing may be purely academic. One court has rightly pointed out that any person who satisfies Rules 24(a) [governing intervention as of right] will also meet Article III's standing requirement.

(... footnote continued next page)

requirement. *See Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998)

("[Intervenor] need not show anything more than that it has standing to sue in order to

demonstrate the existence of a legally protected interest for purposes of Rule 24(a)") (citation

omitted).[3]

Movants meet the interest requirement because they have standing. Movants are

nonprofit organizations whose primary missions encompass the preservation of valuable water

resources, including closed basin rivers, wetlands, lakes, ponds, prairie potholes, playa lakes and

similar waters protected by Section (a)(3). (Decl. of Robin Mann at ¶¶ 6, 7, Ex. B; Decl. of Julie

Sibbing at ¶¶ 6, 7, Ex. C.) Movants have members residing throughout the country who use and

---

(... footnote continued from previous page)

*Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (citations omitted and emphasis supplied). Additionally, as the Court alluded to in *Roeder*, even if standing requirements could be applied against intervenor-defendants, case law holds that if at least one party has standing sufficient to invoke a court's Article III jurisdiction with respect to a claim for relief, the court need not inquire into the standing of the other parties. *See, e.g., Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 160 (1981); *Systems Council EM-3 v. AT&T Corp*, 159 F.3d 1376, 1378-79 (D.C. Cir. 1998).

[3] The United States Supreme Court has articulated the requirement for Article III standing:

> to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180-81 (2000) (holding that affidavits by plaintiff group members showing reasonable harm to their aesthetic and recreational interests sufficient to support standing). Groups or organizations, such as the Movants, may establish standing where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

enjoy waters that are protected by Section (a)(3) for a variety of recreational, scientific, cultural, and professional purposes. (Mann Decl. at ¶ 5; Sibbing Decl. at ¶ 5.) For instance, Movants' members regularly swim, boat, take photographs, hike and camp in such waters, including the Mojave River. (Decl. of Carol Wiley at ¶¶ 4, 7, Ex. D; Decl. of Thomas Egan at ¶¶ 5, 6, Ex. E; Decl. of Estelle Delgado at ¶¶ 5, 7, 8, Ex. F.) Movants' members also observe and study wildlife and flora in these waters. (Wiley Decl. at ¶¶ 5, 6; Egan Decl. at ¶¶ 5, 8; Delgado Decl. at ¶¶ 6, 7, 8.) They live next to and near these waters and depend on them for the drinking sources, flood and erosion control, pollutant retention, and the cultural and historical values they bestow upon themselves or their communities. (Wiley Decl. at ¶¶ 2, 3; Egan Decl. at ¶¶ 2, 3; Delgado Decl. at ¶¶ 4, 9, 10.) Each of these interests would be harmed or seriously threatened if federal protection could no longer be asserted under Section (a)(3) and these waters were left without Clean Water Act safeguards. (*See* Wiley Decl. at ¶¶ 10, 11; Egan Decl. at ¶¶ 9, 10; Delgado Decl. at ¶¶ 11, 12, 13; Mann Decl. at ¶¶ 8, 9, 10; Sibbing Decl. at ¶¶ 8, 9, 10.)

The Supreme Court has long held that these types of allegations of environmental and aesthetic harm are sufficient to confer standing. *See Sierra Club v. Morton*, 405 U.S. 727, 734 (1972). Courts have also held that such interests provide a sufficient basis for intervention. *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526-28 (9th Cir. 1983) (holding environmental groups that asserted "environmental, conservation and wildlife interests" had an adequate interest in the litigation to intervene as defendants); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (holding "intervenors in environmental litigation satisfy the injury in fact requirement by showing that group members have direct contact with the environmental subject matter threatened by an adverse decision"); *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. U.S. Department of the Interior*, 100 F.3d 837, 840-844 (10th Cir.

1996) (setting forth the criteria for citizen intervention in challenges to government actions related to environmental protection).

Similarly, in the present case, as described above, members of each of Movants' organizations use and enjoy the waters at stake placed at risk by Plaintiffs' current action. These uses will be immediately and directly impaired if this Court were to rule in Plaintiffs' favor. These far-reaching injuries that Movants' members will suffer are detailed in their Declarations. Given these injuries to Movants' members, which are clearly germane to the purpose of Movants' organizations, and the fact that these injuries can be redressed by a favorable decision by the Court in this matter, Movants meet the test for standing and therefore the interest requirement for intervention.[4]

Additionally, Movants have actively supported the continued validity of Section (a)(3) regulations before both the Corps of Engineers and the EPA over the years. (Mann Decl. at ¶¶ 6, 7; Sibbing Decl. at ¶¶ 6, 7.) For instance, Movants submitted detailed comments to the 2003 Advanced Notice of Proposed Rulemaking, *see* 68 Fed. Reg. 1991 (Jan. 15, 2003), where Movants advocated for no change in existing rules, which include Section (a)(3), and continued strong application of Section (a)(3) to protect water resources. (Mann Decl. at ¶ 7; Sibbing Decl. at ¶ 7.) Courts have ruled that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also, NRDC v. USEPA*, 99 F.R.D. at 609 (would-be intervenors had sufficient interest where they benefited from a government regulatory measures that would be set aside if the plaintiffs were successful).

---

[4] *See supra* note 3.

The foregoing interests suffice to establish the interest requirement of Movants'
intervention of right. If this Court were to grant Plaintiffs' request to set aside Section (a)(3), all
of the above interests of Movants would be injured. That injury would be traceable to the
reversal of Section (a)(3), and is redressable by a decision not to reverse Section (a)(3). (*See*
Wiley Decl. at ¶ 12; Egan Decl. at ¶ 11; Delgado Decl. at ¶ 13; Mann Decl. at ¶ 11; Sibbing
Decl. at ¶ 10.) Moreover, Movants' interests in preventing unlawful discharges of pollutants and
in restoring and maintaining the integrity of the nation's waters are precisely those protected by
Clean Water Act §§ 301(a) and 404. *See, e.g., Riverside Bayview*, 474 U.S. at 132-39.

Additionally, on numerous prior occasions, courts have permitted environmental groups
to intervene opposing industry challenges to government actions. *See Building Industry Ass'n of
Superior California v. Babbitt*, 979 F. Supp. 893, 896 (D. D.C. 1997) (environmental groups
participated as defendant-intervenors in a challenge by landowners to a Fish and Wildlife Service
listing decision under the Endangered Species Act); *California Forestry Ass'n v. Thomas*, 936 F.
Supp. 13, 15 (D. D.C. 1996) (an environmental group participated as defendant-intervenor in an
action brought by timber companies, a trade association, and a local county to challenge a Forest
Service decision under the National Environmental Policy Act and the National Forest
Management Act); *Newport Galleria Group v. Deland*, 618 F. Supp. 1179, 1180 (D. D.C. 1985)
(environmental groups participated as defendant-intervenors in developer's action to prevent
EPA from holding public hearings under the Clean Water Act regarding proposed construction in
wetlands area); *Peabody Coal Co. v. Watt*, 553 F. Supp. 1201, 1202 n.1 (D. D.C. 1982)
(environmental groups participated as defendant-intervenors in an action by coal companies and
industry associations challenging Interior Department regulations for surface coal mining on
prime farmlands).

In addition to these District Court cases, the D.C. Circuit also commonly allows environmental organizations to intervene as respondents in industry challenges to agency regulations. *See, e.g., Virginia v. EPA*, 108 F.3d 1397, 1399 (D.C. Cir. 1997) (public health and environmental organizations participated as respondent-intervenors in an industry petition challenging an EPA action under the Clean Air Act); *American Paper Institute, Inc. v. EPA*, 996 F.2d 346, 348, 354 n.8 (D.C. Cir. 1993) (an environmental group participated as respondent-intervenor in an industry petition challenging an EPA regulation under the Clean Water Act); *Shell Oil Co. v EPA*, 950 F.2d 741, 743 (D.C. Cir. 1991) (an environmental group participated as respondent-intervenor in an industry petition challenging an EPA decision under the Resource Conservation and Recovery Act).

For the above reasons, Movants meet the interest test for intervention of right.

**B.    Movants' Interests May Be Impaired or Impeded if They Are Not Permitted to Intervene in this Action.**

The "impairment" element of the test for intervention looks primarily to the "'practical consequences' of denying intervention," *NRDC*, 561 F.2d at 909 (quoting *Nuesse*, 385 F.2d at 702), and asks whether, as a practical matter, the denial of intervention will impede the prospective intervenor's ability to protect its interests in the subject of the action. As the D.C. Circuit has observed, this emphasis on "practical disadvantage" was "designed to liberalize the right to intervene in federal actions." *Nuesse*, 385 F.2d at 701-02.

Movants satisfy the impairment requirement for intervention. As demonstrated above, Movants and their members possess significant interests in the use and enjoyment of waters that may be regulated under Section (a)(3) such as wetlands, closed basin rivers, playa lakes, prairie potholes, and similar waters. The interests of Movants and their members are at risk. If Plaintiffs are successful in persuading this Court to strike down Section (a)(3), numerous

13

valuable waters in the United States will be subject to degradation and destruction without recourse to the protections afforded by the CWA.

Finally, if Movants are not permitted to intervene, they will be severely hampered in presenting their perspective on the scope of regulation under the CWA and Section (a)(3), for neither the agencies nor this Court will be inclined to revisit these issues in subsequent proceedings. *See International Union v. Scofield*, 382 U.S. 205, 213 (1965) ("Permitting intervention [] insures fairness to the would-be intervenor. If intervention is permitted, the parties to the Board proceedings are able to present their arguments on the issues to a reviewing court which has not crystallized its views. To be sure, if intervention is denied in the initial review proceeding, the charged party would not be bound by the decision under technical *res judicata* rules. Still, the salient facts having been resolved and the legal problems answered in this initial review, subsequent litigation serves little practical value to the potential intervenor. In the second appellate proceeding, the Court of Appeals would almost invariably defer to the initial decision as a matter of *stare decisis* or of comity.") (footnote omitted); *NRDC*, 561 F.2d at 909 (noting that in determining impairment, the court must look to the practical effects of denying intervention in a particular case even when future litigation remains possible); *Nuesse*, 385 F.2d at 702 (finding that principles of stare decisis "may in some cases supply the practical disadvantage that warrants intervention as of right"); *Sierra Club v. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993) (holding that impairment existed where "the relief sought by the [plaintiffs] would constrain the [agency], which would not then be free to violate the terms of the declaratory and injunctive relief in later administrative proceedings").

Therefore, the Court's disposition of this case may directly impair the interests of Movants and their members.

**C.    Movants' Interests May Not Be Adequately Represented By Existing Parties to this Action.**

The Supreme Court has held that the inadequate representation prong of the intervention test "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). Under this lenient approach, representation may be inadequate where the interests of the party seeking intervention and an existing party are "different," even if they are not "wholly 'adverse,'" *Nuesse*, 385 F.2d at 703, or where they are "similar but not identical," *United States v. Atlantic Telephone and Telegraph Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (hereinafter "*AT&T*"). Indeed, even where parties share broad strategic objectives, they may have differing interests and goals with respect to particular issues at stake in a given case, and those differences may support intervention. *See AT&T*, 642 F.2d at 1293; *NRDC*, 561 F.2d at 912. .

Movants satisfy the minimal burden of inadequate representation. The Plaintiffs' position is plainly at odds with Movants' position. Plaintiffs are attempting to have this Court vacate the Section (a)(3) regulation and enjoin the Corps from enforcing Section (a)(3) across the country, thereby directly threatening Movants' interests. Also, the Defendants' position in this matter may not be wholly consistent with Movants' position. Recently, Defendant Corps and EPA wrote that the Supreme Court's narrow holding in *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers*, 531 U.S. 159 (2001) (hereinafter "*SWANCC*") makes regulation of waters under Section (a)(3) "uncertain." 68 Fed. Reg. 1991, 1996 (Jan. 15, 2003). Movants disagree with this assertion. *SWANCC* only held that certain isolated, intrastate ponds could not be regulated solely because they are used by migratory birds. The ruling did not affect the regulation of waters under Section (a)(3). Given the Corps' and EPA's January 15,

15

2003 guidance memorandum, it cannot be assumed that Defendant Corps will advocate for Movants' position that *SWANCC* does not limit regulation of waters under Section (a)(3).

Moreover, since governmental agencies, such as the Corps, are charged with representing all of the public – including interests that may oppose continued regulation of waters under Section (a)(3) – courts have ruled that that this kind of a potential conflict satisfies the minimal burden of showing inadequacy of representation. *National Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977); *see also Atl. Ref. Co. v. Standard Oil Co.*, 304 F.2d 387 (D.C. Cir. 1962) (intervention allowed on the basis that the government might not adequately represent the interests of the applicant); *Sierra Club v. South Carolina*, 945 F.2d 776 (4th Cir. 1991) (holding that a state administrative agency did not adequately represent the interests of the Sierra Club because the agency should, in theory, represent the interests of all the citizens of the state, including those who might be proponents of interests directly averse to the Sierra Club); *U.S. v. Reserve Mining Co.*, 56 F.R.D. 408, 418 (D. Minn. 1972) ("While there may be a similarity of interests asserted between the environmental groups and the United States, the similarity does not necessarily mean that there will be adequate representation of those interests by the United States").

Thus, Defendants will not adequately represent Movants' interests in this litigation.

**D.    Movants' Motion to Intervene Is Timely.**

The timeliness of a motion to intervene "is to be determined from all the circumstances," *NAACP v. New York*, 413 U.S. 345, 366 (1973), including "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case," *AT&T*, 642 F.2d at 1295. *See also NRDC*, 561 F.2d at 907. The determination of

timeliness is within "the sound discretion" of the District Court, "but a court should be more reluctant to refuse when," as here, "intervention is sought of right . . . ." *Williams & Humbert*, 840 F.2d at 74-75 (citations omitted).

Movants' motion for intervention is timely. As of the date of this motion, Defendants have not yet answered the complaint, no party has filed a motion addressing the merits of the case, and the Court has issued no rulings. *Cf. Admiral Ins. Co. v. National Casualty Co.*, 137 F.R.D. 176, 177 (D. D.C. 1991) (finding intervention timely where the "major substantive issues in th[e] case [had] not yet been argued or resolved"). The Movants have filed this application well within the time frame that other courts have held to be timely. *See Sanguine, Ltd. v. U.S. Dep't of the Interior*, 736 F.2d 1416 (10th Cir. 1984) (remanded with directions to grant motion to intervene filed over thirty days after the entry of judgment); *U.S. v. 36.96 Acres of Land*, 754 F.2d 855 (7th Cir. 1985) (ruling motion to intervene filed over three and one-half years after the action was initiated was timely); *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970) (ruling motion to intervene filed more than a year after the action commenced was timely when there had been no legally significant proceedings other than the completion of discovery and motion would not cause any delay in the overall litigation); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (granting intervention to conservation organizations since "[t]he intervention motion was filed at a very early stage, before any hearings or rulings on substantive matters").

In the instant case, Movants have moved to intervene as soon as practicable. This motion is being made before the Court has ruled on any substantive issues or on the Defendants' Motion to Dismiss and Plaintiffs' Motion to Strike, and at a time that will not cause prejudice to any party. Movants did not seek to add briefing to either the Motion to Dismiss or the Motion to

17

Strike. Thus, the Movants' intervention will neither prejudice the rights of the existing parties, nor delay the expeditious resolution of this case. Further, this intervention motion comes prior to any answer by the Defendants. Accordingly, Movants' intervention is timely.

## II. ALTERNATIVELY, THIS COURT SHOULD GRANT MOVANTS PERMISSIVE INTERVENTION.

If the Court does not grant Movants intervention of right, Movants request, in the alternative, that the Court grant permissive intervention. Federal Rule of Civil Procedure 24(b) provides for permissive intervention, upon timely motion, "when an applicant's claim or defense and the main action have a question of law or fact in common." FED. R. CIV. P. 24(b)(2). The rule further provides that, in exercising its discretion to consider a motion for permissive intervention, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id*.

Movants meet all of the prerequisites for permissive intervention. First, as demonstrated above, their motion is timely, coming before any significant action has been taken in the case. Second, the arguments that Movants intend to raise plainly share common questions of law and fact with the claims and defenses that will be asserted by Plaintiffs and Defendants, as all issues will revolve around the legality of Section (a)(3) rule and the scope of the Clean Water Act's geographic jurisdiction. Finally, allowing intervention will not unduly delay the litigation or prejudice the rights of existing parties, because, as stated above, the Court has not yet ruled on any substantive issues or on the Corps' Motion to Dismiss and Plaintiffs' Motion to Strike, Defendants have yet to file an answer, and Movants stand ready to cooperate in the efficient adjudication of the case.

Moreover, in view of Movants' substantial interest and experience in the subject of this case, allowing Movants to intervene would ensure that Movants' positions are aired on critical

issues within their expertise, thereby offering the Court a perspective that the Court would not otherwise hear, and that may assist in the Court's resolution of this matter. *See NRDC*, 561 F.2d at 912-13 (observing that a prospective intervenor's experience and expertise can contribute significantly to the "informed resolution[]" of questions before the court, and "serve as a vigorous and helpful supplement to [the government's] defense"); *Hodgson*, 473 F.2d at 130 (recognizing that "the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard"). Thus, if the Court does not grant Movants intervention of right, it should exercise its discretion to grant them permissive intervention.

## CONCLUSION

For the above reasons, Movants respectfully submit that this Court should grant their

request for intervention of right or, in the alternative, permissive intervention.

DATED: May 31 , 2006.

Respectfully submitted,

John Kostyack
D.C. Bar No.: 415484
National Wildlife Federation
1400 16th Street, N.W.
Suite 501
Washington, D.C. 20036
(202) 797-6879
(202) 797-6626 (fax)

James G. Murphy
Vermont Bar No.: 000628938
National Wildlife Federation
58 State Street
Montpelier, VT 05602
(802) 229-0650
(802) 229-4532 (Fax)

Attorneys for National Wildlife Federation,
and Sierra Club

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Motion to Intervene by National Wildlife Federation and Sierra Club was mailed, postage pre-paid, to the following on the 31st day of May, 2006:

John Andrews Hodges
Eric S. Andreas
WILEY, REIN & FIELDING, LLP
1776 K Street, NW
Washington, DC 20006-2304

Attorneys for Plaintiffs

Kelly A. Johnson
Acting Assistant Attorney General,
Environment and Natural Resources Division
Eileen T. McDonough
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENTAL DEFENSE SECTION
P.O. Box 23986
L'Enfant Plaza Station
Washington, D.C. 20026

Attorneys for Defendants

John Kostyack