UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| P & V ENTERPRISES, FRIENDLY VALLEY EQUESTRIAN CONDO VIEW HOMES, INC., and SCC ACQUISITIONS, INC. <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS and LIEUTENANT GENERAL CARL A. STROCK, COMMANDER AND CHIEF OF ENGINEERS, <br><br> Defendants. | Civil No.: 05-01579 (RBW) |

**DECLARATION OF ROBIN MANN**

I, Robin Mann, make the following declaration under penalty of perjury.

1. This declaration is based on my personal knowledge, information, and belief.

2. I am a resident of Rosemont, Pennsylvania. I am over the age of twenty-one years and suffer from no legal incapacity.

3. I have been actively involved as a volunteer in Sierra Club's advocacy on wetlands conservation for over ten years. I currently serve as Chair of the National Wetlands Working Group for the Sierra Club. In that capacity, I have coordinated the development of Sierra Club's positions with respect to administrative, legislative and litigation matters related to Clean Water Act protections of wetlands.

4. Sierra Club is a national non-profit corporation, organized under the laws of California, with over 770,000 members and with chapters and groups in every state of nation, including California, and in Canada. Sierra Club nationally is dedicated to

exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to achieve these objectives. Sierra Club is organized regionally into groups and chapters, including the Mojave Group, with just under 500 members, which is actively engaged in promoting the protection of the natural resources of and protection of the Mojave Desert including the Mojave River and its tributaries. Other groups and chapters across the nation are similarly concerned with the protection of water resources in their respective areas of the country.

5. Sierra Club has members that use intrastate waters currently protected under the Clean Water Act pursuant to 33 C.F.R. § 328.3(a)(3) ("Section (a)(3)"), including the Mojave River and its tributaries, for a variety of uses and enjoyments, such as bird and other wildlife observation, kayaking, swimming and fishing.

6. Sierra Club has made it a priority since the enactment of the Clean Water Act to ensure that broad Clean Water Act protections are implemented. Sierra Club recognizes that many intrastate waters protected under Section (a)(3) are vital to protecting water quality and healthy aquatic systems. As such, Sierra Club has engaged in efforts to make sure that Section (a)(3) remains a viable tool to protect these resources. As part of these efforts since the Act's passage and the later promulgation of rules concerning the Act's jurisdictional scope, Sierra Club has advocated for broad Clean Water Act protections for water resources, including intrastate waters, by commenting on proposed changes to the regulatory definition of "waters of the United States", monitoring federal agency application of protections to intrastate waters, educating the

public about the importance of these intrastate waters to maintaining healthy aquatic ecosystems, and other actions.

7. Sierra Club has been particularly involved with efforts to ensure that the decision in *Solid Waste Agency of Northern Cook County v. United States* ("*SWANCC*"), 531 U.S. 159 (2001) is not interpreted to unnecessarily remove protections for water resources. Therefore, since *SWANCC*, Sierra Club has made it a priority to ensure that protections remain for intrastate waters such as prairie potholes, playa lakes, vernal pools and other waters important to the health of aquatic systems. Similar to and in one instance in conjunction with co-Movant National Wildlife Federation (NWF), Sierra Club has co-produced and publicly distributed two reports focusing on protecting water resources after *SWANCC*: "Reckless Abandon: How the Bush Administration is Exposing America's Waters to Harm," and "Where Rivers Are Born: The Scientific Imperative for Defending Small Streams and Wetlands". Sierra Club, along with NWF and others, submitted extensive written comments to EPA and the Corps in response to the January 15, 2003 Advanced Notice of Proposed Rulemaking advocating to those agencies that they uphold their regulations which provide for broad Clean Water Act protection for wetlands, streams and other waters; participated in litigation, including two cases in California (along with NWF and others), that involve legal questions regarding the jurisdictional scope of the Clean Water Act after the *SWANCC* decision; and developed a guidance document to inform our members about the risks posed to intrastate and other waters where they are denied Clean Water Act protections as non-jurisdictional.

8. Any ruling that would restrict the scope of Clean Water Act protections would substantially interfere with Sierra Club's mission to preserve and protect water

resources, and hamper its members' ability to use and enjoy such waters and other resources across the nation and in the Mojave River basin.

9. Sierra Club has been active in protecting water resources from discharges not only from dredged and fill materials, which are regulated by the U.S. Army Corps of Engineers and delegated states pursuant to Section 404 of the Clean Water Act, but also from discharges of other pollutants, including toxic pollutants, which are regulated by the Environmental Protection Agency and delegated states under Section 402 of the Act. Since Clean Water Act jurisdiction does not differentiate between types of discharges in waters, any rollback in the Act's jurisdictional scope will affect jurisdiction for all discharges, including toxic materials that could present immediate and severe risks to human health.

10. If Section (a)(3) waters are removed from protection under the Clean Water Act, polluters and others may discharge to these waters without the safeguards of the Act. Without federal authority over these discharges, polluting activities would not be noticed, and the Sierra Club members and other members of the public would not be made aware of plans to discharge pollutants to waters or to fill wetlands. Without a notice and comment period, Sierra Club members and the public at large would not have the ability to express concerns about polluting activities. Moreover, provisions in the Clean Water Act allowing for citizen enforcement to remedy illegal polluting activities in waters would no longer be applicable for any waters removed from the Act's jurisdiction, further impeding Sierra Club members and others of the public from protecting themselves and water resources from the harmful effects of pollution.

11.     A decision by this Court that Section (a)(3) can no longer be used to protect water resources would leave many important intrastate waters throughout the Nation subject to federally unregulated pollution or destruction. The harm to Sierra Club's interests can only be redressed by a decision ruling against Plaintiffs' facial challenge to Section (a)(3) and upholding the legality of Section (a)(3) as a regulatory tool to assert jurisdiction over water resources under the CWA.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this ___8th___ day of May, 2006.

_____
Robin Mann