IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| P & V ENTERPRISES, FRIENDLY VALLEY EQUESTRIAN CONDO VIEW HOMES, INC., and SCC ACQUISITIONS, INC.<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS and LIEUTENANT GENERAL CARL A. STROCK, COMMANDER AND CHIEF OF ENGINEERS,<br><br>    Defendants. | Civil No.:<br>05-01579 (RBW) |

**DECLARATION OF JULIE SIBBING**

I, Julie Sibbing, make the following declaration under penalty of perjury pursuant to 28 U.S.C. §1746.

1. This declaration is based on my personal knowledge, information, and belief.

2. I am a resident of Alexandria, Virginia. I am over the age of twenty-one years and suffer from no legal incapacity.

3. I work for the National Wildlife Federation ("NWF"), serving as Senior Program Manager for Wetlands Policy for the Wetlands and Water Resources Program in NWF's Office of Federal and International Affairs in Washington, D.C. In that capacity, which I have held since 2005 (I have worked on wetlands policy issues for NWF since 2000 in other capacities), I coordinate NWF's national campaign to encourage Congressional, administrative and legal actions to protect wetlands and water resources for the benefit of both human and wildlife populations.

4. NWF is the nation's largest member-supported nonprofit conservation advocacy and education organization. NWF has approximately one million individual members nationwide, and affiliate organizations in 46 states and territories, including California. NWF is headquartered in Reston, Virginia, with field offices throughout the United States. The mission of NWF is to educate, mobilize, and advocate to preserve and strengthen protection for wildlife and wild places. A major concern of NWF is the protection of water resources, such as intrastate rivers, lakes, wetlands, streams and other waters. NWF has been advocating for the protection of vital resources, such as rivers, wetlands, and streams, upon which wildlife depends since its founding in 1936.

5. NWF has members that use waters protected under the Clean Water Act pursuant to 33 C.F.R. § 328.3(a)(3) ("Section (a)(3)") , like the Mojave River basin, for fishing, hunting, wildlife study and observation, recreation and other use and enjoyment.

6. Since waters like prairie potholes, closed basin rivers, playa lakes, and similar intrastate waters currently protected under Section (a)(3) and the Clean Water Act are so vital to wildlife, NWF has actively worked on behalf of its members to ensure protection of these water resources and wetlands. Throughout its history, NWF has worked to maintain or strengthen broad Clean Water Act protections for water resources; defended the broad jurisdiction of the Clean Water Act in litigation; submitted comments and other documents to maintain and advocate for broad Clean Water Act protections; and frequently attended meetings with Environmental Protection Agency and U.S. Army Corps of Engineers officials to advocate for broad application of Clean Water Act protections under Section (a)(3) and other applicable regulatory provisions.

7. NWF has been particularly active on the issue of Clean Water Act jurisdiction since the Supreme Court's ruling in *Solid Waste Agency of Northern Cook County v. United States* ("*SWANCC*"), 531 U.S. 159 (2001). Since *SWANCC*, NWF has worked on behalf of its members to ensure that Clean Water Act protections remain for jurisdictional waters, particularly waters protected under Section (a)(3), throughout the country and in California. NWF has co-produced and publicly distributed two major reports focusing on protecting wetlands and water resources after *SWANCC*: "Reckless Abandon: How the Bush Administration is Exposing America's Waters to Harm," and "Wetlands At Risk: Imperiled Treasures"; maintained a page on the NWF website to educate NWF members and the general public about the value of wetlands and water resources, the risk to these resources from the *SWANCC* decision and actions individuals may take to address the problem, http://www.nwf.org/ourprograms (see "Clean Water Authority"); submitted extensive written comments to EPA and the Corps in response to the January 15, 2003 Advanced Notice of Proposed Rulemaking advocating to those agencies that they uphold their regulations which provide for broad Clean Water Act protection for wetlands, streams and other waters, including waters protected under Section (a)(3); regularly reported to NWF members on NWF's efforts to ensure that Clean Water Act protection is asserted and maintained for water resources to the full extent required by law; and often participated in litigation, including two cases in California, that involve legal questions regarding the jurisdictional scope of the Clean Water Act after the *SWANCC* decision.

8. Any ruling that would diminish the scope of Clean Water Act protections for water resources would substantially interfere with NWF's mission to preserve and

protect water resources including intrastate closed basins, wetlands, prairie potholes, playa lakes and similar waters, and with its members' ability to use and enjoy such waters and other resources across the Nation.

9. When waters are not protected under the Clean Water Act, polluters and others may discharge to such unprotected waters without federal oversight or permitting procedures under applicable Sections of the Clean Water Act (Section 404, which governs discharges of dredge and fill material and Section 402, which governs discharges of other pollutants). Since federal authorization would no longer be required, proposed activities would not be noticed, and the public would not be apprised of plans to discharge pollutants to waters or to fill wetlands. Without receiving notice and an opportunity to comment on the various proposals that would impact waters currently protected under Section (a)(3) throughout the Nation, the public, including NWF and its members, are denied the opportunity to formally or informally comment on the activities in waters that would be carried out by polluters.

10. A decision by this Court that Section (a)(3) can no longer be used to protect water resources would leave many waters throughout the Nation at risk of federally unregulated pollution or destruction. The harm to NWF's interests can only be redressed by a decision ruling against Plaintiffs' facial challenge to Section (a)(3) and upholding the legality of Section (a)(3) as a regulatory tool to assert jurisdiction over water resources under the Clean Water Act.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd day of May, 2006.

_____
Julie M. Sibbing