**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| P & V ENTERPRISES, FRIENDLY VALLEY EQUESTRIAN CONDO VIEW HOMES, INC., SCC ACQUISITIONS, INC., and SUNCAL MARTINVILLE LLC,<br><br>          Plaintiffs,<br><br>          v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS and LIEUTENANT GENERAL CARL A. STROCK, COMMANDER AND CHIEF OF ENGINEERS,<br><br>          Defendants. | Case No. 1:05CV01579 (RBW) |

**SECOND AMENDED COMPLAINT**

P & V Enterprises, Friendly Valley Equestrian Condo View Homes, Inc., SCC Acquisitions, Inc., and SunCal Martinville LLC (collectively "Plaintiffs"), by and through their undersigned attorneys, hereby bring this action for declaratory judgment and other relief against the United States Army Corps of Engineers and Lieutenant General Carl A. Strock, Commander and Chief of Engineers (collectively the "Corps"). This action challenges the Corps' regulations at 33 C.F.R. § 328.3(a)(3) as facially invalid because they exceed the Corps' statutory authority as limited by the Commerce Clause of the Constitution. As explained further below, the unlawful nature of these regulations, and their impact on Plaintiffs, are evidenced by the Corps' recent assertion of jurisdiction over the Mojave River, which is a nonnavigable and entirely intrastate river that has no substantial interstate commerce connections.

Plaintiffs' Second Amended Complaint is substantively the same as the First Amended Complaint, and does not affect the pending motion to dismiss filed by

Plaintiffs. The Second Amended Complaint indicates that since the date of the original Complaint the United States Supreme Court has issued a decision, *Rapanos v. United States*, 126 S. Ct. 2208, 165 L. Ed. 2d 159 (2006), further confirming the holding of a Supreme Court decision cited in the Complaint, *Solid Waste Authority of Northern Cook County v. U.S. Army Corps of Engineers*, 531 U.S. 159 (2001) ("*SWANCC*"). The Second Amended Complaint further states what is already clear from the Complaint: that Soda Lake and the ephemeral tributaries of the Mojave River encompassed by the Barstow Property are "nonnavigable." *See* ¶¶ 11, 15, 16, 39.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action under the Constitution of the United States and under 28 U.S.C. § 1331, and has the authority to grant the relief requested under 28 U.S.C. § 2201-2202.

2.  Venue is proper in the District of Columbia under 28 U.S.C. §§ 1391(b), (e).

## THE PARTIES

3.  As of the date of the original Complaint, P & V Enterprises and Friendly Valley Equestrian Condo View Homes, Inc. ("Sellers") held title to approximately 8,000 acres of vacant, undeveloped desert land located in western San Bernardino County, California just south of the limits of the City of Barstow along Interstate 15 (hereinafter referred to as the "Barstow Property").

4.  As of the date of the original Complaint, SCC Acquisitions, Inc., a California company, was under contract with Sellers to acquire title to a substantial portion of the Barstow Property for development of a master-planned mixed-use community (hereinafter referred to as the "Barstow Project"). Since that time, the transaction with

Sellers has been completed and title to approximately 7,500 acres of the Barstow Property has been vested in SunCal Martinville LLC, a Delaware limited liability company, which is also a single purpose entity under common control and ownership with SCC Acquisitions, Inc.

5.  Defendant Army Corps of Engineers ("Corps") is an agency of the United States, organized and existing under the laws of the United States. The Corps is an "agency" within the meaning of 5 U.S.C. § 552, against which this action may be maintained.

6.  Defendant Lieutenant General Carl A. Strock is the Commander and Chief of Engineers for the Army Corps of Engineers and is responsible for the administration of the Corps' authority under Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344.

## BACKGROUND

### The Statutory and Regulatory Scheme

7.  Section 404 of the CWA grants the Corps authority to issue permits "for the discharge of dredged or fill material into the **navigable waters** at specified disposal sites." CWA § 404(a), 33 U.S.C. § 1344(a) (emphasis added).

8.  Navigable waters are defined by CWA § 502(7) as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

9.  The Corps' regulations at 33 C.F.R. § 328.3(a)(3) define the term "waters of the United States" without any reference to navigability to include isolated, intrastate waters with only a speculative interstate commerce connection:

> (3) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use,

> degradation or destruction of which **could affect interstate or foreign commerce** including any such waters:
>
> > (i) Which are or could be used by interstate or foreign travelers for recreational or other purposes; or
> > (ii) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or
> > (iii) Which are used or could be used for industrial purpose by industries in interstate commerce.

*Id.* (emphasis added).

10. Tributaries of such waters are included in this definition. *See* 33 C.F.R. § 328.3(a)(5).

11. Supreme Court case law holds that the navigability requirement cannot be read out of the CWA and that Corps jurisdiction does not apply to nonnavigable, isolated, intrastate waters. *See SWANCC,* 531 U.S. at 171; *Rapanos*, 165 L. Ed. 2d at 170-71 (plurality) (citing S*WANCC*); *id.* at 195, 200 (Kennedy, J. concurring in judgment) (citing *SWANCC*). Further, the Supreme Court has also held that there must be a substantial effect on interstate commerce for federal jurisdiction to exist. *See, e.g.*, *United States v. Lopez*, 514 U.S. 549 (1995). Section 328.3(a)(3) violates both these requirements.

12. Section 301(a) of the CWA makes it illegal to discharge fill material into a water of the United States without a permit issued by the Corps. *See* 33 U.S.C. § 1311(a).

13. As a practical matter, the requirement for a permit can have profound impacts on a landowner and/or developer. Such a requirement can diminish the size or scope of a project, prevent project goals from being realized, increase its cost and the sale price of property affected by such a determination, and detrimentally impact other investment and planning factors related to a project. It can also subject land use or a

development project to additional regulatory review by additional agencies (such as the Fish and Wildlife Service and the Environmental Protection Agency), thereby imposing additional, and frequently significant, demands on the project. As a practical matter, it can render an otherwise feasible project infeasible.

14. Discharge of fill material without a permit can result in severe civil and criminal penalties. *See* CWA § 309(b), (c), 33 U.S.C. § 1319(b), (c). For example, knowing violations can result in up to six years in prison in addition to a fine of $100,000 per day of violation. *See* CWA § 309(c)(2), 33 U.S.C. § 1319(c)(2).

15. The Barstow Property lies in close proximity to the Mojave River and encompasses several nonnavigable ephemeral tributaries to it. (Ephemeral is defined as occurring for short durations and in direct response to precipitation.) As further described herein, the Corps has asserted jurisdiction over the Mojave River and upon information and belief has asserted jurisdiction over tributaries to the Mojave River. Development of the Barstow Project will have a direct impact on tributaries to the Mojave. Because under the Corps' regulations at § 328.3(a)(5) tributaries of waters of the United States are also subject to the Corps' jurisdiction, Plaintiffs would be required to obtain a permit from the Corps before proceeding with the Barstow Project.

## **The Mojave River**

16. The Mojave River is a nonnavigable, isolated, intrastate river located entirely within the State of California; indeed, the Mojave is located entirely within a single inland (i.e., non-coastal) county, San Bernardino County. The Mojave River begins at the Mojave Forks Dam, where any water quickly percolates into the ground below the Dam. It terminates more than a hundred miles away from the Pacific Ocean in

the Mojave Desert at Soda Lake, which is a nonnavigable playa lake near the town of Baker.

17. Playa lakes, like Soda Lake, are among the flattest landforms in the world and are formed when water drains into basins with no outlet to the sea and then quickly evaporates leaving behind a white crust of evaporate minerals like sodium carbonate and sodium bicarbonate. It is from these minerals that the Soda Lake gets its name. Although standing water can on occasions be found in Soda Lake following very wet weather, it is normally completely dry.

18. The Mojave River is not a typical river. A "river," as defined by Webster's Dictionary, is "a large natural stream of water emptying into a large body of water, as an ocean or lake . . . ." The Mojave is anything but this. To begin with, the Mojave is not a continuously flowing river. As stated above, its water quickly percolates into the ground where the River begins. Most of its surface is normally dry. It consists primarily of only intermittent and ephemeral surface water flow. There are only a few stretches near the town of Victorville and at Afton Canyon where shallow surface water flow can be described as regularly occurring or perennial. Moreover, any water that flows through the normally dry Mojave River channel does not flow into a large body of water, but instead trickles toward Soda Lake in the middle of the desert.

19. Around the Barstow area, surface water flow in the Mojave is at best ephemeral and occurs only during storm events. The rest of the time, the river channel is dry. For example, data from the United States Geological Survey's 1999 California Hydrologic Data Report for the Mojave River at Barstow show that the annual mean flow during 1999 for the Mojave at Barstow was 0.000 cubic feet per second.

20. Because the Mojave River has only intermittent and ephemeral flow along nearly its entire course, it is nonnavigable, even for small watercraft. Thus, there is no recreational boating that occurs along the Mojave itself. The only recreational boating that occurs near, but not on, the Mojave River is in two small man-made lakes in the town of Victorville, which is more than 30 miles upriver of Barstow. Both these lakes are separate from, and do not connect to, the Mojave River.

21. Recreational fishing also does not occur along the Mojave, but is limited to the man-made lakes in Victorville. There are also no commercial fishery operations on the Mojave River.

22. Any waters that do occasionally flow along the course of the Mojave are not used or diverted for industrial purposes linked to interstate commerce.

### The Corps' Assertion of Jurisdiction Over the Mojave River

23. After the Supreme Court's decision in *SWANCC*, which raised substantial doubts about the Corps' authority to regulate nonnavigable, isolated, intrastate waters such as the Mojave River, the Corps and EPA published a joint memorandum in the Federal Register providing clarifying guidance in the wake of *SWANCC* (hereinafter "Joint Guidance"). The Joint Guidance requires Corps field staff in the district offices to obtain Headquarters approval prior to asserting jurisdiction over intrastate non-navigable waters. 68 Fed. Reg. 1,991, 1,996 (Jan. 15, 2003).

24. Counsel for Plaintiffs have been in contact with the Corps regarding the Mojave River in relation to the Barstow Project, and specifically inquired whether the Corps intended to assert jurisdiction over the Mojave River.

25. In response, Plaintiffs' counsel received verbal confirmation from Corps Headquarters that the Corps is asserting jurisdiction over the entire length of the Mojave River despite the fact that it is non-navigable along its entire length.

26. In response to further inquiries from Plaintiffs' counsel, the Corps provided a document (attached hereto), entitled "Fact Sheet, Subject: Jurisdictional Determination for the Mojave River watershed, including Arrowhead and Silverwood Lakes in light of the U.S. Supreme Court decision in the Solid Waste Agency of Northern Cook County (SWANCC), Petitioner v. U.S. Army Corps of Engineers regarding Clean Water Act (CWA) jurisdiction within isolated, non-navigable, intrastate waters of the United States" (Jan. 24, 2001) ("JD Fact Sheet"). Consistent with its title concerning jurisdiction within "isolated, non-navigable, intrastate" waters, the JD Fact Sheet provides bases for the Corps' assertion of jurisdiction over the Mojave River, not in terms of navigable waters, but in terms of the Corps' regulations at 33 C.F.R. § 328.3(a)(3). The JD Fact Sheet asserts that the Supreme Court in *SWANCC* did not strike down § 328.3(a)(3) and that "[b]ased on HQ guidance, the Corps still regulates isolated, non-navigable, intrastate, water bodies that have a significant federal interstate commerce nexus that do not rely on migratory bird use as the sole basis."

27. Taking into account guidance from both the Corps' Chief Counsel and EPA's General Counsel regarding the Supreme Court's decision in *SWANCC*, the JD Fact Sheet provides that jurisdiction over the Mojave River pursuant to 33 C.F.R. § 328.3(a)(3) can be based on: (i) use by interstate or foreign travelers for recreational or other purposes; (ii) fish or shellfish that can be taken and sold in interstate or foreign

commerce; or (iii) use of the Mojave's waters for industrial purpose in interstate commerce.

28.  Regarding the first of these bases, as the JD Fact Sheet itself points out, there are few recreational opportunities along the Mojave River. Below the Mojave Forks Dam, the only recreational uses cited by the JD Fact Sheet include picnicking, fishing in one of the man-made lakes upriver in Victorville (which does not connect to the River), and hiking, camping, and illegal off-road vehicle use near Afton Canyon. None of these activities involve actual navigation on the Mojave River or the use of its waters. This is further recognition in the JD Fact Sheet that the Mojave is nonnavigable. And the JD Fact Sheet makes no assertion that the Mojave River is used by interstate or foreign travelers.

29.  Although the JD Fact Sheet notes that there is boating on Silverwood Lake, which is an impounded lake located in the San Bernardino Mountains *above* the Mojave Forks Dam that ultimately drains into the Mojave River, the JD Fact Sheet also correctly points out that the Mojave River is not a tributary of Silverwood Lake. Thus, Silverwood Lake cannot provide a basis for jurisdiction as to the Mojave River. The same holds true for the other two impounded lakes in the San Bernardino Mountains that ultimately drain into the Mojave River, Lake Arrowhead (which is private) and Lake Gregory. Further, with regard to all three lakes, the JD Fact Sheet recognizes only "potential recreation by interstate or foreign travelers." Moreover, as the JD Fact Sheet points out with regard to Lake Arrowhead and Lake Gregory specifically, "the extent of use by interstate or foreign travelers is not well documented."

30.     As to the second alleged basis for an interstate commerce connection, the JD Fact Sheet correctly states that there are "no commercial fishery operations" along the Mojave River.  Although there is a fish hatchery near the Mojave River in the vicinity of Victorville, the Corps admits in the JD Fact Sheet that the hatchery is a *non-commercial* operation operated by the California Department of Fish and Game.  Moreover, the fish hatchery does not draw water from the river to support its operations.

31.     The third purported commerce nexus alleged by the Corps in the JD Fact Sheet  (use of the Mojave's waters for industrial purpose in interstate commerce) is as equally unavailing as the first two.  As the Corps admits in the JD Fact Sheet, there are "no current surface water diversions on the river" that are used for industrial operations.  As the JD Fact Sheet explains, the fish hatchery, the Victor Valley Wastewater Treatment Plant, and the Mojave Water Agency do not divert flows from the Mojave River and none of these qualify as industrial operations.

32.     Other potential interstate commerce connections that the JD Fact Sheet discusses include "habitat for endangered species along the river and use of water to irrigate crops sold in interstate commerce."  But the Corps has admitted in the JD Fact Sheet with regard to these bases that "their validity as a means to assert jurisdiction is not clear and should be addressed by future guidance."

33.     In fact, guidance has addressed this issue.  The Joint Guidance specifically states that "[I]n view of SWANCC, neither agency will assert CWA jurisdiction over isolated waters that are both intrastate and non-navigable, where the sole basis for asserting CWA jurisdiction rests on any of the factors listed in the 'Migratory Bird Rule.'"  68 Fed. Reg. 1,996.  The Migratory Bird Rule specifically lists as factors: (1)

waters "[w]hich are or would be used as habitat for endangered species;" and (2) waters "[u]sed to irrigate crops sold in interstate commerce." 51 Fed. Reg. 41,217.

34.  In short, the Corps' improper reliance on Section 328.3(a)(3) to assert jurisdiction over the Mojave River has a profound negative impact on the Plaintiffs. Plaintiffs are directly aggrieved by the Corps's erroneous assertion of jurisdiction over the Mojave River because this determination has a direct adverse affect on the value of the Barstow Property and adds significant engineering and administrative costs to the project.  In addition, these additional burdens may prevent Plaintiffs from achieving what are otherwise legal uses of the Barstow Property and render their project objectives infeasible.  Moreover, as a result of the Corps' assertion of jurisdiction over the Mojave River, Plaintiffs are faced with a classic Hobson's choice:  Either be subject to an unlawful assertion of jurisdiction by the Corps and wrongly be saddled with significant costs, delays, and demands of an otherwise inapplicable regulatory regime, or proceed with developing the Barstow Project without a permit from the Corps and risk severe civil and criminal penalties.

## CLAIM FOR RELIEF
### (The Corps' Regulations at 33 C.F.R. § 328.3(a)(3) are Facially Invalid)

35.  Plaintiffs repeat and reallege the statements and allegations in paragraphs 1-34 above.

36.  The Corps' regulations at 33 C.F.R. § 328.3(a)(3) define the term "waters of the United States" to include:

> (3)  All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which **could affect interstate or foreign commerce** including any such waters:

- 11 -

> (i)  Which are or could be used by interstate or foreign travelers for recreational or other purposes; or
> (ii)  From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or
> (iii)  Which are used or could be used for industrial purpose by industries in interstate commerce.

*Id*. (emphasis added).

37. Section 328.3(a)(3) does not require that there be *any* nexus with navigable waters. In fact, the Corps' regulations at 33 C.F.R. Part 329 defining navigable waters expressly do not apply to the Corps' definition for waters of the United States under 33 C.F.R. § 328.3(a)(3). *See* 33 C.F.R. § 329.1 ("This definition does not apply to authorities under the Clean Water Act which definitions are described under 33 C.F.R. Parts 323 and 328.").

38. Nor does § 328.3(a)(3) require that the regulated activity have a substantial effect on interstate commerce, but only that it "could affect interstate or foreign commerce." This alleged link to federal jurisdiction pursuant to the Commerce Clause is directly at odds with the Supreme Court's standard requiring that there be a *substantial* effect on interstate commerce to confer federal jurisdiction over intrastate activities.

39. Furthermore, the Supreme Court in *SWANCC* expressly held that the navigability requirement could not be read out of the CWA and that Corps jurisdiction does not apply to nonnavigable, isolated, intrastate waters. *See* 531 U.S. at 167, 171. This has been further confirmed by the Supreme Court in *Rapanos*. *See* 165 L. Ed. 2d at 170-71 (plurality opinion) (citing *SWANCC*); *id.* at 195, 200 (Kennedy, J., concurring in judgment) (citing *SWANCC*).

40. Because § 328.3(a)(3) expressly repudiates any requirement of navigability and sets an impermissibly low and wholly speculative threshold for a nexus with interstate commerce, the Corps exceeded its statutory authority under the CWA as limited by the Commerce Clause in promulgating § 328.3(a)(3) and therefore this section is facially invalid.

41. Moreover, Congress chose in the CWA to "recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources . . . ." CWA § 101(b), 33 U.S.C. § 1251(b). Thus, the Corps' regulations also violate §1251(b) and Congress' intent by impinging on the States' traditional and primary power over land and water use entirely within their borders.

42. Enforcement of the Corps' facially invalid regulations at 33 C.F.R. § 328.3(a)(3) directly threaten Plaintiffs' business and/or property interests by unlawfully requiring a permit prior to initiating development of the Barstow Property.

43. The Corps' promulgation of facially invalid regulations at 33 C.F.R. § 328.3(a)(3) that exceed the Corps' statutory congressional authority as limited by the Commerce Clause provides the grounds for the relief that Plaintiffs seek.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants, and relief as follows:

1. Declare that the Corps' regulations 33 C.F.R. § 328.3(a)(3) are facially invalid.

2. Vacate the Corps' regulations at 33 C.F.R. § 328.3(a)(3).

3. Enjoin the Corps from enforcing its regulations at 33 C.F.R. § 328.3(a)(3) anywhere in the United States.

4. Award such other relief as the Court determines is just and proper.

          Respectfully submitted,

          */s/ John A. Hodges*
          John A. Hodges (Bar No. 085506)
          Eric Andreas (Bar No. 462777)
          WILEY REIN & FIELDING LLP
          1776 K Street, N.W.
          Washington, D.C. 20006
          Telephone: 202-719-7000
          Facsimile: 202-719-7049

          *Attorneys for Plaintiffs*

Dated: September 12, 2006