**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
P&V ENTERPRISES, et al.,                 )
                                                    )
                       Plaintiffs,            )
                                                    )
           v.                                       )        Civil Action No.: 1:05-cv-1579 (RBW)
                                                    )
UNITED STATES ARMY CORPS           )
OF ENGINEERS, et al.,                     )
                                                    )
                       Defendants.          )
                                                    )
_____)

**MEMORANDUM OPINION**

P&V Enterprises ("P&V"), Friendly Valley Equestrian Homes ("FVE"), SCC

Acquisitions, Inc. ("SCC"), and SunCal Martinville LLC ("SunCal") (collectively "the

plaintiffs") bring this action against the United States Army Corps of Engineers ("USACE" or

"the Corps") and Lieutenant General Carl A. Strock, Commander and Chief of Engineers

(collectively "the defendants"), challenging the facial validity of USACE regulation 33 C.F.R. §

328.3(a)(3) (2006) and seeking injunctive and declaratory relief under the federal question

statute, 28 U.S.C. § 1331 (2000), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02

(2000). Second Amended Complaint ("Compl.") at 1, 11-13. Specifically, the plaintiffs argue

that § 328.3(a)(3) is "facially invalid because [it] exceed[s] the Corps' statutory authority as

limited by the Commerce Clause of the [United States] Constitution." Id. at 1. Currently before

the Court is the defendants' motion to dismiss the plaintiffs' complaint for lack of subject-matter

jurisdiction ("Defs.' Mot.").[1]  Because the Court concludes that the plaintiffs' facial challenge to

§ 328.3(a)(3), without an accompanying as-applied challenge, is barred by the six-year statute of

limitations imposed upon "every civil action" filed against the United States, 28 U.S.C. § 2401(a)

(2000), it grants the defendants' motion and dismisses the plaintiffs' complaint without

prejudice.

## I. Factual Background

The Clean Water Act ("CWA"), first enacted in 1972, establishes a comprehensive

statutory program "to restore and maintain the chemical, physical, and biological integrity of the

Nation's waters."  33 U.S.C. § 1251(a) (2000).  To that end, the CWA prohibits the discharge of

---

[1]  The following papers have been submitted in connection with this motion: (1) the defendants' Memorandum in Support of Motion to Dismiss ("Defs.' Mem."); (2) Plaintiffs' Opposition to the Defendants' Motion to Dismiss ("Pls.' Opp."); and (3) Reply Memorandum in Support of Motion to Dismiss ("Defs.' Reply").

On July 10, 2006, the plaintiffs filed their First Amended Complaint, which added SunCal as a plaintiff and provided a brief factual update regarding the sale of the property that is the subject of the dispute in this action.  First Amended Complaint ("First Am. Compl.") ¶¶ 3-4.  Two weeks later, on July 24, 2006, the defendants moved to dismiss the First Amended Complaint, noting that the amendments made to the complaint "have no bearing on the jurisdictional defects identified in [the] defendants' pending Motion to Dismiss the [Original] Complaint" and thus arguing that the First Amended Complaint should be dismissed for the reasons stated in the original motion to dismiss.  Motion to Dismiss First Amended Complaint at 1; see also First Am. Compl. at 1 (stating that the First Amended Complaint is "substantively the same as the original Complaint").  The plaintiffs filed an opposition to the motion to dismiss the First Amended Complaint on July 26, 2006, wherein they agreed that the First Amended Complaint "does not impact the status or arguments regarding the pending Motion to Dismiss the [Original] Complaint."  Plaintiffs' Opposition to Defendants' Motion to Dismiss First Amended Complaint at 1.  Finally, with the consent of the defendants, the plaintiffs filed a Second Amended Complaint on September 12, 2006.  See Notice of Consent at 1; Second Amended Complaint ("Second Am. Compl.").  The parties agreed that "the Second Amended Complaint does not affect the Defendants' pending motion to dismiss," and "stipulate[d] that their positions on the pending motion to dismiss are preserved and that [the] Defendants are not required to file a renewed motion to dismiss the Second Amended Complaint."  Notice of Consent at 1.  The defendants' motions to dismiss the original complaint and the first amended complaint are therefore denied as moot.  See Bancoult v. McNamara, 214 F.R.D. 5, 13 (D.D.C. 2003) (denying without prejudice "all pending motions pertaining to the original complaint" where the plaintiff had filed a "supersed[ing] . . . amended complaint"); see also Young v. City of Mount Rainier, 238 F.3d 567, 572 (4th Cir. 2001) (holding that "[a]s a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect") (internal quotation marks and citation omitted).  For the same reason, the Court also denies without prejudice the pending motion to intervene as defendants filed by the National Wildlife Federation and the Sierra Club, see Dkt. No. 20 (June 5, 2006), as well as the plaintiffs' motion to strike alleged mischaracterizations made in the defendants' reply in support of their original motion to dismiss, see Dkt. No. 14 (Dec. 14, 2005).

pollutants into the navigable waters of the United States unless specifically authorized by a

permit issued pursuant to the CWA's statutory scheme.  See 33 U.S.C. §§ 1311(a) (prohibiting

pollutant discharges), 1344(a) (describing the issuance of permits) ("Section 404(a)"), 1362

(defining statutory terms).  Under the CWA, "navigable waters" are defined as "the waters of the

United States, including the territorial seas."  33 U.S.C. § 1362(7).

Section 404(a) of the CWA delegates to the Corps, as an agency of the United States,

"[the] authority to issue permits for the discharge of dredged or fill material into the navigable

waters at specified disposal sites."  Solid Waste Agency of N. Cook County v. U.S. Army Corps

of Eng'rs, 531 U.S. 159, 163 (2001) ("SWANCC") (quoting 33 U.S.C. § 1344(a)) (internal

quotation marks omitted).  Through the evaluation of permit applications, the Corps is authorized

to regulate a variety of activities pertaining to the nation's waters.  33 C.F.R. § 320 et seq.

(2006); see also 33 C.F.R. § 323 et seq. (2006) (implementing Section 404(a)).  In 1986, pursuant

to that authority, the Corps promulgated a regulation "defin[ing] the term 'waters of the United

States' as it applies to the jurisdictional limits of the authority of the Corps of Engineers under

the Clean Water Act."  33 C.F.R. § 328.1; see 51 Fed. Reg. 41,206, 41,250 (Nov. 13, 1986).

This regulation defines the term "waters of the United States," as used in 33 U.S.C. § 1362(7), to

mean, inter alia:

> (3) All . . . waters such as intrastate lakes, rivers, streams (including intermittent
> streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows,
> playa lakes, or natural ponds, the use, degradation or destruction of which could
> affect interstate or foreign commerce including any such waters
> (i) Which are or could be used by interstate or foreign travelers for recreational or
> other purposes;
> (ii) From which fish or shellfish are or could be taken and sold in interstate or foreign
> commerce; or

(iii) Which are or could be used for industrial purpose by industries in interstate commerce.

33 C.F.R. § 328.3(a)(3) (emphasis added).  Tributaries of such waters are also included within this regulatory definition.  33 C.F.R. § 328.3(a)(5).

To "clarify the scope of the Section 404 permit program," the Corps further noted in its preamble to the promulgation of § 328(a)(3) that the definition of "waters of the United States" also included "waters . . . [w]hich are or would be used as habitat by birds protected by Migratory Bird Treaties; . . . other migratory birds which cross state lines; or . . . endangered species."  Fed. Reg. 41,206, 41,216, 41,217 (Nov. 13, 1986).  In 2001, however, the Supreme Court's decision in SWANCC v. U.S. Army Corps of Eng'rs invalidated this "Migratory Bird Rule," holding that the Corps' promulgation of the rule improperly "push[ed] the limits of congressional authority" and "raise[d] significant constitutional questions" under the Commerce Clause.  SWANCC, 531 U.S. at 173; see id. at 174 (finding that to permit the Corps "to claim federal jurisdiction over ponds and mudflats falling within the 'Migratory Bird Rule' would result in a significant impingement of the States' traditional and primary power over land and water use") (citation omitted); see also Rapanos v. United States, ___ U.S. _____, _____, 126 S. Ct. 2208, 2216-17 (2006) (discussing SWANCC).

In the wake of SWANCC, the Corps and the Environmental Protection Agency issued "an advanced notice of proposed rulemaking (ANPRM) in order to obtain early comment on issues associated with the scope of waters that are subject to the [CWA]."  68 Fed. Reg. 1991, 1991 (Jan. 15, 2003); see generally 68 Fed. Reg. 1991, 1991-98 (Jan. 15, 2003).  The ANPRM sought public and professional input on "the definition of 'waters of the United States' . . . [and]

the implications of the SWANCC decision for jurisdictional decisions under the CWA" so that

the agencies might "develop proposed regulations that will further the public interest by

clarifying what waters are subject to CWA jurisdiction."  68 Fed. Reg. 1991, 1991 (Jan. 15,

2003).  The agencies further stated that "[t]he input received by the public in response to [the]

ANPRM will be used . . . to determine the issues to be addressed and the substantive approach

for a future proposed rulemaking addressing the scope of CWA jurisdiction."  Id. (emphasis

added).  Finally, the intra-agency guidance document attached as an appendix to the ANPRM

observed that "in light of SWANCC, it is uncertain whether there remains any basis for

jurisdiction under the other rationales of § 328.3(a)(3)(i)-(iii) over isolated, non-navigable,

intrastate waters."  Id. at 1996.  Notwithstanding this jurisdictional uncertainty and the Corps'

professed intention to issue proposed rules regarding the post-SWANCC scope of § 328.3(a)(3),

id. at 1991, the Corps "ultimately did not amend its published regulations," Rapanos, ___ U.S. at

____, 126 S. Ct. at 2217.  Instead, in December 2003, the Corps issued a press release

"announc[ing] that it would not issue a new rule on federal jurisdiction over isolated waters and

'reiterated' its commitment to the scope of the present regulations."  Pls.' Opp. at 11 (quoting

Pls.' Opp., Exhibit B (Dec. 16, 2003 document entitled, "EPA, Corps of Engineers Issue

Wetlands Decision") ("Press Release") at 1); see also Press Release at 1 (stating that "[a]fter

soliciting public comment to determine if further regulatory clarification was needed, the EPA

and the Corps have decided to preserve the federal government's authority to protect our

wetlands").[2]  The Corps therefore continues to assert CWA jurisdiction over all intrastate waters

---

[2] The press release is available at http://www.hq.usace.army.mil/cepa/releases/swancc12-03.htm (last visited November 27, 2006).

which, through their "use, degradation or destruction[,] . . . could affect interstate or foreign commerce."[3]  33 C.F.R. § 328.3(a)(3).

The plaintiffs brought this action on August 5, 2005, as a facial challenge to § 328.3(a)(3).  Compl. ¶¶ 40-43.  The plaintiffs are title-holders to approximately 8,000 acres of undeveloped land in the desert area of western San Bernadino County, California, near the City of Barstow (hereinafter "the Barstow Property").  Id. ¶¶ 3-4.  Plaintiff SCC, through its control of plaintiff SunCal, plans to develop approximately 7,500 acres of this property as "a master-planned mixed-use community" (hereinafter "the Barstow Project").  Id. ¶ 4.  The Mojave River, described by the plaintiffs as "a nonnavigable, isolated, intrastate river . . . located entirely within a single inland . . . county," id. ¶ 16, is located near the Barstow Property, which "encompasses several [of the river's] nonnavigable ephemeral tributaries," id. ¶ 15.  According to the plaintiffs, the Corps has asserted jurisdiction over the Mojave River and its tributaries pursuant to § 328.3(a)(3).  Id. ¶ 25-26.  Consequently, because the planned development of the Barstow Property "will have a direct impact on tributaries to the Mojave," the plaintiffs state that they "would be required to obtain a permit from the Corps before proceeding with the Barstow Project."  Id. ¶ 15.  The plaintiffs claim that this permit requirement "has a direct adverse [effect] on the value of the Barstow Property and adds significant engineering and administrative costs to the project."  Id. ¶ 34.  Thus, rather than applying for a permit and becoming "wrongly . . . saddled with significant costs, delays, and demands of an otherwise inapplicable regulatory

---

[3]  In 1997, the Fourth Circuit held that the Corps had "exceeded its congressional authorization under the [CWA]" by promulgating the definition of "waters of the United States" contained in § 328.3(a)(3).  United States v. Wilson, 133 F.3d 251, 257 (4th Cir. 1997).  As a result, "CWA jurisdiction under 33 C.F.R. § 328.3(a)(3) in its entirety has been precluded" in states within the jurisdiction of the Fourth Circuit.  68 Fed. Reg. 1991, 1996 (Jan. 15, 2003).

regime," id., the plaintiffs ask this Court to find that § 328.3(a)(3) is facially invalid because it "exceed[s] the Corps' statutory congressional authority as limited by the Commerce Clause," id. ¶ 43.

On October 18, 2005, the defendants moved to dismiss this action for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defs.' Mot. at 1. Specifically, the defendants argue that (1) the plaintiffs' claims are barred by sovereign immunity, Defs.' Mem. at 5-6; and (2) the plaintiffs' claims are untimely under the six-year statute of limitations of 28 U.S.C. § 2401(a) (2000), id. at 6-8.  In response, the plaintiffs contend that (1) their claims are subject to a general waiver of sovereign immunity under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (2000), Pls.' Opp. at 3-4; (2) the six-year limitations period of 28 U.S.C. § 2401(a) is not applicable "to substantive challenges to the facial validity of a regulation," id. at 4; see id. at 4-7; (3) their claims cannot be dismissed under Rule 12(b)(1) because 28 U.S.C. § 2401(a) is not jurisdictional in nature, id. at 8-9; and (4) the six-year limitations period to bring a facial challenge to § 328.3(a)(3) "was reset in 2003 by the Corps' reopening the rule to comment and reiterating its position with regard to its applicability," id. at 9; see id. at 9-12.

For the reasons stated below, the Court concludes that while the plaintiffs' action does trigger the APA's waiver of sovereign immunity, such a waiver is also contingent on the action being filed within the six-year limitations period imposed by § 2401(a) on "every civil action commenced against the United States."  28 U.S.C. § 2401(a).  And, the Court holds that facial challenges to a regulation that are not also accompanied by an as-applied challenge must thus be commenced within six years of the promulgation of the regulation.  Because § 328.3(a)(3) was

promulgated in 1986, and because it is clear from the relevant caselaw that the 2003 ANPRM did

not act to reopen the rule for "serious, substantive reconsideration," <u>Nat'l Mining Ass'n v. Dep't

of Interior</u>, 70 F.3d 1345, 1352 (D.C. Cir. 1995), the plaintiffs' facial challenge to § 328.3(a)(3)

does not fall within § 2401(a)'s six-year limitations period and must therefore be dismissed

without prejudice.  Finally, the Court concludes that § 2401(a) does not serve as a jurisdictional

prerequisite to filing a lawsuit.  Nevertheless, the plaintiffs have asserted no basis on which the

six-year limitations period should be equitably tolled for this action, and their claims are subject

to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief can be granted.

## II. Standards of Review

*A. Motions to Dismiss under Rule 12(b)(1)*

Once a defendant has moved to dismiss a case pursuant to Rule 12(b)(1), "the plaintiff

bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the

evidence." <u>Erby v. United States</u>, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (citing <u>Lujan v.

Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)) (other citations omitted).  "The [C]ourt, in

turn, has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional

authority." <u>Abu Ali v. Gonzales</u>, 387 F. Supp. 2d 16, 17 (D.D.C. 2005) (internal quotation marks

and citation omitted).  A court ruling on a Rule 12(b)(1) motion to dismiss "may consider

materials outside the pleadings" to determine whether it has jurisdiction over the underlying

claims. <u>Jerome Stevens Pharm., Inc. v. FDA</u>, 402 F.3d 1249, 1254 (D.C. Cir. 2005) (citation

omitted); <u>see also</u> <u>Haase v. Sessions</u>, 835 F.2d 902, 906 (D.C. Cir. 1987) (stating that "[i]n

[Rule] 12(b)(1) proceedings, it has been long accepted that the judiciary may make appropriate

8

inquiry beyond the pleadings to satisfy itself on [its] authority to entertain the case") (internal citations and quotation marks omitted). However, where the defendant is challenging the complaint's assertion of jurisdiction as facially invalid, "the court must still accept all of the factual allegations in the complaint as true." Jerome Stevens Pharm., 402 F.3d at 1254 (internal quotation marks and citations omitted); see Erby, 424 F. Supp. 2d at 182 (noting that where "a defendant mounts a 'facial' challenge to the legal sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party") (citations omitted).

B. Motions to Dismiss under Rule 12(b)(6)

When evaluating a motion for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citations omitted). However, the Court need not accept inferences that are unsupported by the facts set forth in the complaint or "legal conclusion[s] couched as . . . factual allegation[s]." Id. (internal quotation marks and citations omitted); see also M.K. v. Tenet, 99 F. Supp. 2d 12, 17 (D.D.C. 2000) (stating that "[b]are conclusions of law and sweeping and unwarranted averments of fact will not be deemed admitted" for the purposes of a Rule 12(b)(6) motion) (citing Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987)). The Court may only consider the facts alleged in the complaint, any documents attached as exhibits, and matters about which the Court may take judicial notice. EEOC v. St. Francis Xavier Parochial Sch., 117

F.3d 621, 624-25 (D.C. Cir. 1997).  A complaint may be dismissed under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002).

### III. Analysis

*A. Sovereign Immunity*

The defendants argue that the plaintiffs' complaint should be dismissed because their allegations do not identify a statutory basis for "the waiver of sovereign immunity necessary to establish the Court's jurisdiction."  Defs.' Mem. at 6; see id. at 5-6.  The plaintiffs contend in return that "claims seeking non-monetary relief against an agency for failing to act under color of legal authority" fall within the ambit of the general waiver of sovereign immunity found in § 702 of the APA.  Pls.' Opp. at 3; see id. at 3-4.  For the reasons stated below, the Court agrees with the plaintiffs.

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit." Fornaro v. James, 416 F.3d 63, 66 (D.C. Cir. 2005) (internal quotation marks and citation omitted); see also FDIC v. Meyer, 510 U.S. 471, 475 (1994) (stating that "[s]overeign immunity is jurisdictional in nature") (citations omitted); United States v. Mottaz, 476 U.S. 834, 841 (1986) (observing that "[w]hen the United States consents to be sued, the terms of its waiver of sovereign immunity describe the extent of the court's jurisdiction") (citation omitted).  This immunity extends to lawsuits not only against the United States but against its federal agencies as well as federal officers acting in an official capacity.  FDIC, 510 U.S. at 475 (stating that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from

10

suit") (citations omitted).  Thus, in order to demonstrate that this Court has jurisdiction to hear their action against the Corps, the plaintiffs must identify a specific waiver of sovereign immunity applicable to their claims.  See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990) (stating that "[a] waiver of sovereign immunity cannot be implied but must be unequivocally expressed") (internal quotation marks and citation omitted); United States v. Mitchell, 463 U.S. 206, 212 (1983) (noting that "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction") (footnote omitted).

The plaintiffs bring this action under the general federal question statute and the Declaratory Judgment Act, neither of which operate as an independent waiver of sovereign immunity.  See Swan v. Clinton, 100 F.3d 973, 981 (D.C. Cir. 1996) (federal question statute); Kennedy v. Rabinowitz, 318 F.2d 181, 186 (D.C. Cir. 1963) (Declaratory Judgment Act).  The plaintiffs argue, however, that § 702 of the APA provides a general waiver of sovereign immunity "in virtually all actions for non-monetary relief against a [United States] agency," even those, like the plaintiffs', that were not brought pursuant to some provision of the APA itself. Pls.' Opp. at 3 (quoting Clark v. Library of Congress, 750 F.2d 89, 102 (D.C. Cir. 1984)) (internal quotation marks omitted); see also 5 U.S.C. § 702 (internal quotation marks omitted). The Court agrees.

Section 702 of the APA states that "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency . . . acted or failed to act . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States."  5 U.S.C. § 702.  The District of Columbia Circuit has conclusively held that "there is no

doubt that § 702 waives the Government's immunity from actions seeking relief other than money damages." Trudeau, 456 F.3d at 186 (quoting Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 260-61 (1999)) (internal quotation marks and other citations omitted).  Moreover, this "waiver of sovereign immunity applies to any suit [against an agency for relief other than money damages,] whether under the APA or not."  Id. (internal quotation marks and citation omitted). Accordingly, because the plaintiffs in this case seek declaratory and injunctive relief rather than monetary damages, Compl. at 13-14, and because their claim is against an agency of the United States and "an officer . . . thereof . . . in an official capacity," 5 U.S.C. § 702; Compl. ¶¶ 5-6, the waiver of sovereign immunity found in § 702 applies to the plaintiffs' claims against the defendants.

### B. The Statute of Limitations

The defendants argue that because § 328.3(a)(3) was promulgated nineteen years prior to the filing of this action, the plaintiffs' facial challenge to the regulation is time-barred by 28 U.S.C. § 2401(a), which imposes a six-year limitations period on all civil actions filed against the United States.  Defs.' Mem. at 6-8; Defs.' Reply at 8-11; see 28 U.S.C. § 2401(a).  The plaintiffs do not dispute that the waiver of sovereign immunity contained in § 702 is subject to § 2401(a)'s limitations period.  See generally Pls.' Opp. at 3-8; see also Irwin, 498 U.S. at 96 (observing that "the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity").  Instead, the plaintiffs argue that "the six-year statute of limitations under [§ 2401(a)] does not apply to substantive challenges . . . that are brought against agency regulations."  Pls.' Opp. at 5.  The Court disagrees.

The express language of § 2401(a) states, with one inapplicable exception, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a) (emphasis added). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, ___ U.S. ____, ____, 126 S.Ct. 2455, 2459 (2006) (internal quotation marks and citation omitted).  Moreover, in Irwin v. Dep't of Veterans Affairs, the Supreme Court held that statutes of limitations, like the six-year limitations period of § 2401(a), are "a condition to the waiver of sovereign immunity and thus must be strictly construed."  Irwin, 498 U.S. at 94. Thus, absent express direction to the contrary, the Court must conclude that, in enacting § 2401(a), Congress intended "the words 'every civil action' [to] mean what they say," and to encompass substantive facial challenges to agency regulations no less than any other type of challenge.  Spannaus v. Dep't of Justice, 824 F.2d 52, 55 (D.C. Cir. 1987); see Impro Prods., Inc. v. Block, 722 F.2d 845, 850 & n.8 (D.C. Cir. 1983) (stating conclusively that § 2401(a) "establishes the period available for judicial review of the validity of administrative decisions") (citation omitted); see also, e.g., Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 186 (4th Cir. 1999) (holding that "[t]he plain language of [§ 2401(a)] encompasses" all complaints seeking review of agency action); Sierra Club v. Slater, 120 F.3d 623, 631 (6th Cir. 1997) (finding that "[n]umerous courts have held . . . that a complaint under the APA for review of an agency action is a 'civil action' within the meaning of [§] 2401(a)" and stating that "it . . . appears beyond question that the six-year statute of limitations of [§] 2401(a) applies to actions brought pursuant to the APA") (citations omitted); Nesovic v. United States, 71 F.3d 776, 778

(9th Cir. 1995) (stating that "[t]he words 'every civil action' [in § 2401(a)] must be interpreted to mean what they say") (footnote omitted).

Furthermore, with the exception of an unpublished 1992 decision by a former member of this Court, Sweet Home Chapter of Cmtys. for a Greater Oregon v. Lujan, Civ. No. 91-1468 (NHJ), 1992 U.S. Dist. LEXIS 8044 (D.D.C. May 29, 1992), no court in this Circuit or, to this Court's knowledge, any other federal court has ever held that facial challenges to agency regulations on substantive (as opposed to procedural) grounds are not subject to the six-year limitations period imposed by § 2401(a) on civil actions filed against the United States.[4]  See Pls.' Opp. at 5; Defs.' Reply at 9-11 (discussing Sweet Home).  Indeed, several other Circuits have expressly held that a facial challenge to a regulation can be brought outside § 2401(a)'s limitations period when it is accompanied by an as-applied challenge, but not on its own.  Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv., 112 F.3d 1283, 1287 (5th Cir. 1997) (holding that "[t]o sustain [a facial challenge to an agency rule more than six years after the rule's publication] . . ., the claimant must show some direct, final agency action involving the particular plaintiff within six years of filing suit"); Wind River Mining Corp. v. United States, 946 F.2d 710, 715 (9th Cir. 1991) (holding that "a challenger contest[ing] the substance of an agency decision as exceeding constitutional or statutory authority . . . may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger") (emphasis added).  And while the plaintiffs are correct that the District of Columbia Circuit has "never squarely addressed [this] issue," Pls.' Opp. at 5, at least

---

[4]  The Court agrees with the defendants, for the reasons stated in their reply to the plaintiff's opposition to the motion to dismiss, that the result in Sweet Home "is not supported by the [District of Columbia] Circuit decisions relied on in that opinion."  Defs.' Reply at 9.

one Circuit decision has concluded that § 2401(a) bars a facial challenge to agency action that

was not timely filed.  Citizens Alert Regarding The Environment v. EPA ("CARE"), 102 Fed.

Appx. 167, 168 (D.C. Cir. 2004).  The plaintiffs in CARE alleged, inter alia, that the EPA had

"acted arbitrarily and capriciously in approving Pennsylvania's program for disbursing [federal

grant money] to individual wastewater disposal projects."  Id.  The CARE Court, however,

dismissed the plaintiffs' claim, stating matter-of-factly that "[u]nder the six-year statute of

limitations for actions against the United States, any facial challenge to EPA's approval of

Pennsylvania's environmental review process is time-barred."  Id. (citing § 2401(a)) (emphasis

added).  In accordance with the CARE Court's guidance, this Court concludes that facial

challenges to agency regulations, like any other civil action filed against the United States, are

subject to § 2401(a)'s six-year limitations period.

In addition, like the Fifth and Ninth Circuits in Dunn-McCampbell and Wind River, the

District of Columbia Circuit has made it clear that there are only two ways in which the facial

validity of "[a]n agency's regulations may be attacked . . . once the statutory limitations period

has expired."  Nat'l Labor Relations Bd. Union v. Fed. Labor Relations Auth. ("NLRB"), 834

F.2d 191, 195 (D.C. Cir. 1987).  First, a litigant with standing to bring an as-applied challenge to

the regulations—that is, someone who, inter alia, has been personally "injured by agency action,"

Nat'l Mining Ass'n, 70 F.3d at 1349—may at the same time "challenge [the] regulations directly

on the ground that the issuing agency acted in excess of its statutory authority in promulgating

them."  NLRB, 834 F.2d at 195; see also id. at 195-96 (stating that "the statutory time limit

restricting judicial review of agency action is applicable only to cut off review directly from the

order promulgating a rule . . . [and] does not foreclose subsequent examination of a rule where

properly brought . . . for review of further agency action <u>applying</u> it") (internal quotation marks and citation omitted) (emphasis added).  "[A] party against whom a rule is applied may, at the time of application, pursue substantive objections to the rule[,] even where the petitioner had notice and opportunity to bring a direct challenge within statutory time limits but failed to do so." <u>NextWave Pers. Commc'ns, Inc. v. FCC</u>, 254 F.3d 130, 141 (D.C. Cir. 2001) (internal quotation marks and citation omitted).  Second, a party may "obtain[] judicial review of agency regulations once the limitations period has run . . . [by] petition[ing] the agency for amendment or rescission of the regulations and then . . . appeal[ing] the agency's decision." <u>NLRB</u>, 834 F.2d at 196.  The plaintiffs have not cited, and this Court cannot find, any Circuit precedent to support the proposition that a facial challenge to a regulation may be brought outside of the statutory limitations period if it is unaccompanied by an as-applied challenge or an appeal of a petition for amendment or rescission that has been denied.  <u>See</u> <u>id.</u> at 195 (stating that "[a]n agency's regulations may be attacked in two ways once the statutory limitations period has expired").

Here, the plaintiffs have expressly averred that they are solely bringing a facial, rather than an as-applied, challenge to § 328.3(a)(3).  <u>See</u>, <u>e.g.</u>, Compl. at 1.  Furthermore, they have not made any representation that they have petitioned the Corps "for amendment or recission of the regulation[]" at issue.  <u>NLRB</u>, 834 F.2d at 196.  Accordingly, the plaintiffs may properly bring their facial challenge to § 328.3(a)(3) only if it is accompanied by an as-applied challenge, which it currently is not, or if their complaint was timely filed within the six-year limitations period prescribed by § 2401(a).  <u>See</u> <u>id.</u> at 195-96; <u>see also</u> <u>Dunn-McCampbell</u>, 112 F.3d at 1287-88 (holding that the six-year limitations period of § 2401(a) barred a facial challenge to National Park Service regulations as untimely where the plaintiffs could not show a basis for an

16

as-applied challenge and had not petitioned for an amendment or recission).  Section 328.3(a)(3)

became "final agency action" for the purpose of § 2401(a) when it was first promulgated in 1986,

see Harris v. FAA, 353 F.3d 1006, 1011-12 (D.C. Cir. 2004), cert. denied, 543 U.S. 809 (2004)

(holding that agency's publication of air traffic controller recruitment notice triggered the six-

year limitations period of § 2401(a)), and the plaintiffs' complaint was filed nineteen years later,

in 2005, Compl. at 1.  Thus, the plaintiffs' facial challenge of the 1986 promulgation of §

328.3(a)(3) is untimely under § 2401(a).

 *C. The Reopener Doctrine*

 The plaintiffs contend that even if substantive facial challenges to agency regulations are

subject to § 2401(a)'s limitations period, their complaint is nevertheless timely because, under

the reopener doctrine, "the clock was reset in 2003 by the Corps' reopening the rule to comment

and reiterating its position with regard to its applicability."  Pls.' Opp. at 9; see id. at 9-12.  The

defendants, on the other hand, argue that the reopener doctrine does not apply because neither the

ANPRM nor the press release issued by the Corps in 2003 demonstrate an "intent to reexamine

the rationale for the existing regulation."  Defs.' Reply at 13; see id. at 11-15.  Rather, according

to the defendants, the Corps simply sought "public input on whether to begin a rulemaking to

amend an existing rule," an action which the defendants claim does not trigger the reopener

doctrine.  Id. at 15.

 The reopener doctrine "is an exception to statutory limits on the time for seeking review

of an agency decision."  CTIA-Wireless Ass'n v. FCC, 466 F.3d 105, 110 (D.C. Cir. 2006)

(internal quotation marks and citation omitted).  It provides that "[i]f for any reason the agency

reopens a matter and, after reconsideration, issues a new and final order, that order is reviewable

on its merits, even though the agency merely reaffirms its original decision." Harris, 353 F.3d at 1011 (internal quotation marks and citation omitted); see also CTIA, 466 F.3d at 110 (stating that the reopener doctrine applies when "an agency conducts a rulemaking or adopts a policy on an issue at one time, and then in a later rulemaking restates the policy or otherwise addresses the issue again without altering the original decision," as long as "the later proceeding explicitly or implicitly shows that the agency actually reconsidered the rule") (internal quotation marks and citations omitted) (emphasis added); Bluewater Network v. EPA, 370 F.3d 1, 16-17 (D.C. Cir. 2004) (stating that "[w]hether an agency has in fact reopened an issue is dependent upon the entire context of the rulemaking including all relevant proposals and reactions of the agency") (internal quotation marks and citation omitted); Nat'l Mining Ass'n, 70 F.3d at 1351 (stating that "the period for seeking judicial review may be made to run anew when the agency in question by some new promulgation creates the opportunity for renewed comment and objection") (internal quotation marks and citation omitted); Pub. Citizen v. Nuclear Reg. Comm'n, 901 F.2d 147, 152-53 (D.C. Cir. 1990) (holding that an agency can be said to have reopened a decision to judicial review when it "reiterates a rule or policy in such a way as to render the rule or policy subject to renewed challenge on any substantive grounds"); cf. Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs, 482 U.S. 270, 278 (1987) (holding that "[w]hen the [Interstate Commerce] Commission reopens a proceeding for any reason and, after reconsideration, issues a new and final order setting forth the rights and obligations of the parties, that order—even if it merely reaffirms . . . the original order—is reviewable on its merits") (citation omitted). An examination of these cases demonstrates that the Corps' 2003 ANPRM and subsequent press release stating

that it would not be revising § 328.3(a)(3) do not constitute a substantive reconsideration of § 328.3(a)(3) for which application of the reopener doctrine is appropriate.

In <u>National Mining Ass'n</u>, for example, the plaintiffs challenged a Department of the Interior regulation "which permit[ted] the Department to issue notices of violation ["NOV"] to mine operators in so-called 'primacy' states." 70 F.3d at 1347. The Department initially promulgated the NOV rule in 1977, <u>id.</u>, but "proposed to amend the rule and sought comments in 1981, . . . expressing concern over whether the rule exceeded the statutory grant of authority," <u>id.</u> at 1348. The following year, the Department "solicited further public comment on the NOV rule," and on March 3, 1983, it "announced that the NOV rule had been 'properly and lawfully promulgated; therefore there is no need to reconsider the issue.'" <u>Id.</u> (no citation in original). Finally, in 1986 the plaintiffs "petitioned [the Department] for a rulemaking to repeal the NOV rule," arguing that the rule did not comport with statutory authority and raised issues of federal-state comity. <u>Id.</u> As explained by the Circuit Court,

> [t]he Department [then] published the petition and sought comments on whether it should institute a rulemaking proceeding. After reviewing the comments submitted, the Department . . . den[ied] the portion of the petition seeking to repeal the NOV rule, explain[ing] that the question whether the NOV rule should be retained had already been considered in previous rulemakings. It also noted statistics showing that NOVs were issued in a small number of primacy states in limited and decreasing numbers, the Department's belief that the rule encouraged operator compliance with state programs, and the desire of the Department to be able to address specific problems without resort to the lengthy process of substituting federal for state primary enforcement authority.

<u>Id.</u> The plaintiffs appealed the denial of their petition for repeal to the district court, which upheld the Department's actions. <u>Id.</u> On appeal, the Circuit Court concluded that the district court lacked jurisdiction over the plaintiffs' claims to the extent that they were not brought

19

"within 60 days of the NOV rule's adoption (or readoption)" under the applicable statutory time period. Id. at 1350 (citing 30 U.S.C. § 1276(a)(1) (1986)). In reaching this conclusion, the Court was not persuaded by the plaintiffs' argument that the Department had reopened the NOV rule for reconsideration and judicial challenge when it (1) published a request for comment on the plaintiffs' 1986 petition for rulemaking; and (2) announced that it was retaining the NOV rule despite the plaintiffs' petition. Id. at 1351. The Court observed that "[t]he reopener doctrine allows judicial review where an agency has . . . undertaken to reexamine its former choice," and stated that "[t]he decision to publish a petition for rulemaking . . . is not evidence of a reexamination of the policy at issue in the petition," particularly when the agency "has itself said nothing on the merits of the petition." Id. (internal quotation marks and citation omitted). Furthermore, the Court concluded that the Department's denial of the plaintiffs' petition for rulemaking after soliciting public comment "[did] not evince the kind of agency reconsideration that [the District of Columbia Circuit has] held sufficient to give rise to judicial review." Id. at 1352. Notably, the Court found that the Department had not "undertaken a serious, substantive consideration of the NOV rule" despite the fact that it had "responded to assertions in the petition and comments that the NOV rule was being used excessively with statistics demonstrating limited use in a limited number of states." Id. Finally, the Court remarked in dicta that "[a]n application of the 'reopener doctrine' would have been appropriate in 1983," after the Department "explicitly requested comment on the repeal of the NOV rule (as opposed to merely requesting comment on whether to open a rulemaking) and then, having received comment," expressly decided to retain the rule. Id. (emphases added).

Unlike the Department of the Interior in <u>National Mining Ass'n</u>, the Corps did not

publish anything in response to the public comments it received regarding its ANPRM.  <u>See</u> <u>id.</u>

(describing Interior's use of statistical data to rebut "assertions in the petition and comments");

<u>see</u> <u>also</u> <u>Bluewater</u>, 370 F.3d at 17 (finding that "[the] EPA's response to . . . comments

[submitted regarding its snowmobile standards] clearly indicate[d] that it actually

reconsidered—and therefore reopened to challenge—its . . . decision").  Rather, the Corps, which

noted that "[t]he input received by the public in response to [the] ANPRM will be used . . . to

determine the issues to be addressed and the substantive approach for a future proposed

rulemaking addressing the scope of CWA jurisdiction," 68 Fed. Reg. 1991, 1991 (Jan. 15, 2003),

declined to initiate a new rulemaking or to otherwise promulgate <u>anything</u> concerning §

328.3(a)(3) after publishing its ANPRM, instead simply issuing a press release "reiterat[ing] its

commitment to the scope of the present regulations," Pls.' Opp. at 11 (internal quotation marks

omitted); <u>see</u> Press Release at 1.  And in contrast to the actions of the Department of the Interior

described in <u>National Mining Ass'n</u>, in issuing its ANPRM, the Corps "merely request[ed]

comment on whether to open a rulemaking," 70 F.3d at 1352, a factual scenario which the Circuit

Court (albeit in dicta) definitively stated would not trigger application of the reopener doctrine,

<u>id.</u> (remarking that "[a]n application of the 'reopener doctrine' would have been appropriate in

1983," when Interior "explicitly requested comment on the repeal of the NOV rule (<u>as opposed to

merely requesting comment on whether to open a rulemaking</u>) and then, having received

comment," expressly decided to retain the rule) (emphasis added); <u>see</u> 68 Fed. Reg. 1991, 1991

(Jan. 15, 2003) (stating that "[the] ANPRM seeks public input on what, <u>if any</u>, revisions in light

of SWANCC might be appropriate to [§ 328.3(a)(3)]") (emphasis added); Press Release at 1

(stating that the Corps "solicit[ed] public comment to determine if further regulatory clarification was needed").  In addition, the Corps' announcement that it would not issue a new rule regarding the scope of its CWA jurisdiction provided no new defenses or justifications for the definition of the term "waters of the United States" as contained in § 328.3(a)(3).  Press Release at 1; see CTIA, 466 F.3d at 112 (concluding that agency had reconsidered policy in part because its order reaffirming its interpretation "indisputably offer[ed] two new justifications not found in [prior orders]"); Bluewater, 370 F.3d at 17 (finding that reopener doctrine applied where agency "considered [public] comments on [their] merits and responded, in part, with a new defense of [its policy]"); id. (concluding that the agency "put the basis of its finding in play by offering new evidence [in support of its standards]").  Finally, the plaintiffs do not, and cannot, contend that the Corps "issue[d] a new and final order . . . reaffirming its original decision [to promulgate § 328.3(a)(3)]."  Harris, 353 F.3d at 1011 (internal quotation marks and citation omitted); see Edison Elec. Inst. v. EPA, 996 F.2d 326, 330 (D.C. Cir. 1993) (finding that reopener doctrine applied where agency announced in preamble to final rulemaking "that it had decided not to pursue 'a definitive reinterpretation' of [its policy regarding the storage of certain wastes]") (citation omitted); cf. Trudeau, 456 F.3d at 189 (finding that a press release does not "constitute 'final agency action' under the APA") (internal quotation marks and citation omitted).  The Court therefore concludes that the Corps did not "undertake[] a serious, substantive [re]consideration" of § 328.3(a)(3) when it (1) solicited comments regarding the applicability of SWANCC to § 328.3(a)(3) in order to consider whether future revisions to the regulation were appropriate; (2) did not respond to any of the public comments submitted concerning the regulation; (3) did not provide any new defenses, justifications, or legal rationales for the scope of jurisdiction asserted

in § 328.3(a)(3); and (4) did not "issue[] a new and final order . . . reaffirm[ing] its original

decision." Harris, 353 F.3d at 1011 (internal quotation marks and citation omitted).

Accordingly, the plaintiffs' facial challenge to § 328.3(a)(3) is not timely under § 2401(a) and

must be dismissed without prejudice.

### D. The Jurisdictionality of 28 U.S.C. § 2401(a)

Finally, the plaintiffs argue that the defendants' motion to dismiss is not properly brought

pursuant to Rule 12(b)(1) because statutes of limitations such as § 2401(a) do not constitute a

jurisdictional bar to filing a lawsuit. Pls.' Opp. at 8-9. In support of this proposition, the

plaintiffs cite the Supreme Court's 1990 decision in Irwin, id. at 8 (citing Irwin, 498 U.S. at 95-

96), as well as a number of recent decisions from other Circuits relying on Irwin to hold that §

2401(a) and other similar statutes of limitations are not jurisdictional, id. at 8-9; see Clymore v.

United States, 217 F.3d 370, 374 (5th Cir. 2000) (holding that "the doctrine of equitable tolling

has potential application in suits . . . that are governed by the statute of limitations codified at [§

2401(a)]") (footnote omitted); Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 770-71 (9th Cir.

1997) (holding that "§ 2401(a)'s six-year statute of limitations is not jurisdictional, but is subject

to waiver") (citations omitted); see also, e.g., Rakes v. United States, 442 F.3d 7, 25 (1st Cir.

2006) (holding that 28 U.S.C. § 2401(b) is non-jurisdictional); Perez v. United States, 167 F.3d

913, 917 (5th Cir. 1999) (stating that "Section 2401 is a garden variety limitations provision" and

holding that § 2401(b) is non-jurisdictional); Glarner v. Dep't of Veterans Admin., 30 F.3d 697,

701 (6th Cir. 1994) (holding that § 2401(b) is non-jurisdictional).[5] The plaintiffs further assert

---

[5] 28 U.S.C. § 2401(b) states that

(continued...)

that although the District of Columbia Circuit held conclusively prior to Irwin that "§ 2401(a) is

a jurisdictional condition attached to the government's waiver of sovereign immunity,"

Spannaus, 824 F.2d at 55 (citations omitted); see also Nat'l Mining Ass'n, 70 F.3d at 1350

(noting that the District of Columbia Circuit has "repeatedly held that temporal limitations on

judicial review are jurisdictional in nature") (citations omitted), it has "recently expressed doubt

about the jurisdictional nature of [§ 2401(a) and other] analogous statute[s] of limitations" in

light of the Irwin Court's holding, Harris, 353 F.3d at 1013 n.7. Pls.' Opp. at 9 (also citing

Chung v. Dep't of Justice, 333 F.3d 273, 277 (D.C. Cir. 2003)).

     In response, the defendants acknowledge "that Irwin may well have overturned the

precedent that [§] 2401(a) is jurisdictional in nature." Defs.' Reply at 4 (citing Harris). The

defendants contend, however, that "Irwin does not alter the fundamental requirement that an

action must be timely filed." Id. Instead, the defendants claim that Irwin held simply that

plaintiffs who have not initiated court actions within the time period allotted by statute are

entitled, where appropriate, to invoke the equitable tolling doctrine, which "allows a plaintiff to

avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital

information bearing on the existence of his claim." Id. (quoting Currier v. Radio Free

Europe/Radio Liberty, Inc., 159 F.3d 1363, 1367 (D.C. Cir. 1998)) (internal quotation marks

omitted). According to the defendants, the plaintiffs "do[] not suggest any basis for equitable

---

[5](...continued)
[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (emphasis added).

tolling," and their complaint should therefore be dismissed as time-barred whether or not § 2401(a) acts as a jurisdictional bar to litigation. Id. at 5. Finally, the defendants argue that even if § 2401(a) is non-jurisdictional, the Court is empowered to construe the defendants' Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Defs.' Reply at 4-5; see also Defs.' Mem. at 7 n.2.

In Irwin, the Supreme Court examined whether failure to file a Title VII employment discrimination claim against the federal government within the thirty-day period prescribed in 42 U.S.C. § 2000e-16(c) (2000) serves as an absolute jurisdictional bar to the claim.[6] Irwin, 498 U.S. at 91. The Court concluded that it did not, holding that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." Id. at 95-96. The Court explained, however, that relief under the equitable tolling doctrine is extended "only sparingly" to plaintiffs who have failed to file their complaints within the applicable deadlines. Id. at 96. It further stated that equitable relief in this regard is typically afforded "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Id. (footnotes omitted). The Court then found that the plaintiff's "failure to file [his Title VII complaint] in a timely manner . . . [amounted] at best [to] a garden variety claim of excusable

---

[6] As the Court in Irwin observed, "[§] 2000e-16(c) provides that an employment discrimination complaint against the Federal Government under Title VII must be filed within thirty days of receipt of notice of final action taken by the [Equal Employment Opportunity Commission]." Irwin, 498 U.S. at 91 (internal quotation marks omitted).

neglect," to which "the principles of equitable tolling . . . do not extend." Id.  Thus, despite its

conclusion that § 2000e-16c, while "a condition to the waiver of sovereign immunity," id. at 94,

was a non-jurisdictional barrier to which the "rebuttable presumption of equitable tolling"

applied, id. at 95-96, the Irwin Court held that the plaintiff's Title VII suit was time-barred by the

statute of limitations.

　　　Although Irwin concerned itself only with § 2000e-16c, the Court gave no indication that

its holding that "the time limits imposed by Congress in a suit against the Government" are

subject to equitable tolling was intended to be applied narrowly, id. at 96, nor did it distinguish §

2000e-16c from § 2401(a) or other similar statutes of limitations, see id. at 95 (characterizing its

holding as "making the rule of equitable tolling applicable to suits against the Government . . . in

the same way that it is applicable to private suits").  But see United States v. Brockcamp, 519

U.S. 347, 350 (1997) (finding that 26 U.S.C. § 6511 (2000), unlike "ordinary limitations

statutes," is not subject to the equitable tolling doctrine because it "sets forth its time limitations

in unusually emphatic form [and] in a highly detailed technical manner that, linguistically

speaking, cannot easily be read as containing implicit exceptions").  Moreover, the Supreme

Court's recent holding in Arbaugh v. Y&H Corp. further bolsters the plaintiffs' contention that

courts are not automatically deprived of jurisdiction to hear lawsuits against the United States

filed outside the limitations period of § 2401(a).  See Arbaugh v. Y&H Corp., ___ U.S. ____,

____, 126 S.Ct. 1235, 1242-45 (2006).  In Arbaugh, the Court held that unless Congress "clearly

states that a threshold limitation on a statute's scope shall count as jurisdictional . . . courts

should treat the restriction as nonjurisdictional in character." Id. at ____, 126 S.Ct. at 1245

(internal citations omitted).  The language of § 2401(a), which states that "every civil action

commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues," 28 U.S.C. § 2401(a), is not substantively different from the language of 28 U.S.C. § 2501 (2000), the statute governing the limitations period for bringing actions before the United States Court of Federal Claims. See 28 U.S.C. § 2501 (providing that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues"). And the Irwin Court specifically examined § 2501 in considering the breadth of its rule regarding the applicability of equitable tolling to suits filed against the federal government, concluding that although "an argument can undoubtedly be made that the [language of § 2501] is more stringent than the [language of § 2000e-16(c)]," it was "not persuaded that the difference between them is enough to manifest a different congressional intent with respect to the availability of equitable tolling." Irwin, 498 U.S. at 95. Thus, following Irwin and Arbaugh, the Court holds that the "rebuttable presumption of equitable tolling" applies to lawsuits governed by the six-year limitations period of § 2401(a), as it does to all other "suits against the United States" if Congress has not clearly provided otherwise. Id. at 95-96; see id. at 96 (stating that Congress may provide that a particular statutory limitations period is not subject to equitable tolling "if it wishes to do so"); see also Brockcamp, 519 U.S. at 350 (holding that Congress did not intend the limitations period found in 26 U.S.C. § 6511 to be subject to the equitable tolling doctrine).

Although the Court concludes that § 2401(a) is non-jurisdictional and is therefore subject to equitable tolling, the plaintiffs make no argument why § 2401(a)'s six-year limitations period should be equitably tolled in their case, instead simply contending that "[the] Defendants'

Motion to Dismiss under Rule 12(b)(1) alleging a lack of subject matter jurisdiction must fail." Id. at 8.  And because the plaintiffs have failed to establish a basis on which the limitations period governing their facial challenge to § 328.3(a)(3) should be equitably tolled, the defendants are correct that "the only consequence" of § 2401(a)'s nonjurisdictionality is "to change the basis for dismissal from [Rule 12(b)(1)] to Rule 12(b)(6)."  Defs.' Reply at 2; see Lindsey v. United States, 448 F. Supp. 2d 37, 54-55 (D.D.C. 2006) (Walton, J.) (discussing the reasons why "a defendant does not waive its right to assert that the plaintiff has failed to state a claim upon which relief can be granted simply by not including that defense in its initial Rule 12(b) motion to dismiss") (citing Fed. R. Civ. P. 12(g) and 12(h)(2)); see also Harris, 353 F.3d at 1013 n.7 (suggesting that if § 2401(a) is non-jurisdictional, the district court can construe a Rule 12(b)(1) motion to dismiss as having been brought under Rule 12(b)(6)); accord Trudeau, 456 F.3d at 187 (stating that even if an action was "erroneously dismissed . . . pursuant to Rule 12(b)(1)" by the district court, the Circuit "could nonetheless affirm the dismissal if dismissal were otherwise proper based on failure to state a claim under [Rule 12(b)(6)]") (internal quotation marks and citation omitted).

Furthermore, the District of Columbia Circuit has stated that "it is practical and fully consistent with plaintiffs' rights and the efficient use of judicial resources" to dismiss a complaint sua sponte for failure to state a claim upon which relief can be granted where it is clear that "the claimant cannot possibly win relief."  Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990) (internal quotation marks and citation omitted).  Thus, even if the Court were unable to construe the defendants' motion as seeking to dismiss the complaint for failure to state a claim upon which relief can be granted, it could dismiss the complaint on its own

initiative on those grounds, because it is clear that (1) the plaintiffs' facial challenge to §

328.3(a)(3) was not timely brought within the six-year limitations period of § 2401(a), and (2)

the plaintiffs have not suggested, nor, based on the record before it, can the Court fathom, any

reason why the limitations period should be equitably tolled.

### IV. Conclusion

For the reasons set forth above, the Court concludes that although 5 U.S.C. § 702

provides a waiver of sovereign immunity to the plaintiffs' claims against the government in this

action, the complaint is nonetheless barred by the six-year limitations period of 28 U.S.C. §

2401(a) because (1) it solely asserts a facial challenge to § 328.3(a)(3); and (2) it was brought

more than six years after the rule's promulgation.  Accordingly, the plaintiffs' complaint is

dismissed without prejudice.

**SO ORDERED** this 19th day of December, 2006.[7]


REGGIE B. WALTON
United States District Judge

---

[7] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.