Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued January 11, 2008      Decided February 19, 2008

No. 07-5060

P & V ENTERPRISES, ET AL.,
APPELLANTS

v.

U.S. ARMY CORPS OF ENGINEERS, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 05cv01579)

---

    *John A. Hodges* argued the cause for appellants. With him on the briefs were *Eric S. Andreas* and *Andrew M. Miller*.

    *Anna T. Katselas*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Katherine W. Hazard* and *Eileen T. McDonough*, Attorneys. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

2

Before: ROGERS and GARLAND, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The issue on appeal is whether the U.S. Army Corps of Engineers ("Corps") reopened consideration of a 1986 rule such that the district court erred in dismissing a facial challenge to the rule as untimely under 28 U.S.C. § 2401(a). We affirm.

**I.**

Section 404 of the Clean Water Act ("CWA") authorizes the Corps to regulate the discharge of dredged and fill material into "navigable waters," which are "the waters of the United States, including the territorial seas." 33 U.S.C. §§ 1344, 1362(7). In 1986, the Corps promulgated a definition of "waters of the United States."[1] 51 Fed. Reg. 41,210, 41,216-17, 41,250

---

[1] As defined by the Corps, the term "waters of the United States" includes, but is not limited to, the following:

> waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce including any such waters:
>
> > (i) Which are or could be used by interstate or foreign travelers for recreational or other purposes; or
> > (ii) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or
> > (iii) Which are used or could be used for industrial purpose by industries in interstate commerce . . . .

3

(Nov. 13, 1986) (codified at 33 C.F.R. § 328.3(a)(3)) ("the 1986 rule"). In 2001, the Supreme Court held that the Corps had exceeded its authority under section 404(a) in promulgating the Migratory Bird Rule as applied to "an abandoned sand and gravel pit." *Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs* ("*SWANCC*"), 531 U.S. 159, 174 (2001). Because that rule raised "significant constitutional questions" by "invok[ing] the outer limits of Congress' power" under the Commerce Clause, the Court held that "a clear indication" of Congressional intent was required and there was none. *Id.* at 172.

In January 2003, the Corps issued an *Advance Notice of Proposed Rulemaking* ("*ANPRM*"), 68 Fed. Reg. 1991 (Jan. 15, 2003). Its summary section stated:

> Today's ANPRM requests public input on issues associated with the definition of "waters of the United States" and also solicits information or data from the general public, the scientific community, and Federal and State resource agencies on the implications of the *SWANCC* decision for jurisdictional decisions under the CWA. *The goal . . . is to develop proposed regulations* that will further the public interest by clarifying what waters are subject to CWA jurisdiction and affording full protection to these waters . . . . The *input received* from the public in response to today's ANPRM *will be used* by the [Corps] to determine the issues to be addressed and the substantive approach *for a future proposed rulemaking* addressing the scope of

---

33 C.F.R. § 328.3(a)(3). Although Environmental Protection Agency has promulgated a comparable definition, *see* 40 C.F.R. § 232.2, and joined the Corps in issuing the 2003 statements that we discuss *infra*, because it is not an appellee, the opinion refers only to the Corps.

4

> CWA jurisdiction. Pending this rulemaking, should questions arise, the regulated community should seek assistance from the Corps . . . .

*Id.* at 1991 (emphasis added). An accompanying memorandum contained "clarifying guidance regarding [*SWANCC*]," advising that "more refined factual and legal analysis will be required to make a jurisdictional determination" under the 1986 rule for certain waters and instructing staff to obtain prior Headquarters' approval. *Id.* at 1996, 1997-98. Approximately 130,000 comments were received. On December 16, 2003, the Corps issued a one-page Press Release announcing that it "would not issue a new rule on federal regulatory jurisdiction over isolated wetlands." Press Release, U.S. Army Corps of Eng'rs & U.S. Envtl. Prot. Agency, EPA, Corps of Engineers Issue Wetlands Decision, at 1 (Dec. 16, 2003).

On August 5, 2005, P&V Enterprises, Friendly Valley Equestrian Homes, SCC Acquisitions, Inc., and SunCal Martinville LLC (hereafter "P&V") filed suit, challenging the 1986 rule's definition of "waters of the United States" as "facially invalid" under the Commerce Clause. Compl. ¶ 40. The complaint alleged that the Corps had overstepped its authority in asserting jurisdiction over the Mojave River, which is an "isolated, intrastate" river. *Id.* ¶ 16. As owners or intended developers of approximately 8,000 acres of "desert land" that includes several "ephemeral" tributaries to the Mojave River, near Barstow, California, P&V asserted economic injury and that it faced the "classic Hobson's choice" of submitting to costly regulation or paying enforcement penalties. *Id.* ¶ 34. The Corps moved to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject-matter jurisdiction, asserting sovereign immunity and, alternatively, that if the complaint stated a claim under the Administrative Procedure Act ("APA") it was untimely under 28 U.S.C. § 2401(a). P&V responded that

5

the APA's waiver of sovereign immunity applied regardless whether it was stating an APA claim, *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996), that section 2401(a) was not jurisdictional in view of *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), and that the Corps had reopened the 1986 rule for facial challenge by issuing the *ANPRM* and Press Release in 2003. The district court dismissed the complaint for failure to state a claim, relying on section 2401(a). *P&V Enters. v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 2d 134, 147 (D.D.C. 2006). P&V appeals and our review is *de novo*. *Felter v. Kempthorne*, 473 F.3d 1255, 1259 (D.C. Cir. 2007).

**II.**

Section 2401(a) provides that: "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). This court has held that "[t]he right of action first accrues on the date of the final agency action." *Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004). Because P&V did not challenge the 1986 rule until 2005, it relies on the reopening doctrine.

The reopening doctrine allows an otherwise stale challenge to proceed because "the agency opened the issue up anew," and then "reexamined . . . and reaffirmed its [prior] decision." *Pub. Citizen v. Nuclear Reg. Comm'n*, 901 F.2d 147, 150-51 (D.C. Cir. 1990) (quoting *Ass'n of Am. R.R. v. Interstate Commerce Comm'n*, 846 F.2d 1465, 1473 (D.C. Cir. 1988)). The doctrine only applies, however, where "the entire context," *id.* at 150, demonstrates that the agency "ha[s] undertaken a serious, substantive reconsideration of the [existing] rule," *Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 70 F.3d 1345, 1352 (D.C. Cir. 1995). It is designed "to ensure that 'when the agency . . . by

6

some new promulgation creates the opportunity for renewed comment and objection,' affected parties may seek judicial review, even when the agency decides not to amend the long-standing rule at issue." *Gen. Motors Corp. v. EPA*, 363 F.3d 442, 449-50 (D.C. Cir. 2004) (quoting *State of Ohio v. EPA*, 838 F.2d 1325, 1328 (D.C. Cir. 1988)). We conclude that the Corps' statements in the 2003 notices do not demonstrate final agency action under the reopening doctrine.

First, the January 2003 *ANPRM* did not set forth for public comment the Corps' views on the 1986 rule at all, much less its views in the form of a proposed rulemaking. The *ANPRM* requested information and data from interested parties so that the Corps could determine upon consideration of the responses whether to take any further action in view of *SWANCC*. The occasion for the *ANPRM* was, as P&V acknowledges, the Supreme Court's decision in *SWANCC*, not any Corps decision to reconsider the 1986 rule. *See, e.g.*, 68 Fed. Reg. at 1991-93. That was, as the name of the *ANPRM* indicated, merely a possible next step. Although the *ANPRM* stated that the Corps "ha[d] not engaged in a review of the regulations with the public concerning CWA jurisdiction for some time," it went on to make clear that this request for comment was limited to a request for "early estimates of potential resource implications of the *SWANCC* decision." *Id.* at 1993-94. In particular, the Corps sought "information, data, or studies addressing the extent of resource impacts to isolated, intrastate, non-navigable waters"; "information regarding the functions and values of wetlands and other waters that may be affected by the issues discussed in this ANPRM"; and "scientific and technical studies and data, analysis of environmental impacts, effects on interstate commerce, other impacts, etc." *Id.* at 1994.

Second, although referring to the 1986 rule and other regulations, the *ANPRM* did not suggest that the Corps

7

considered the substance of the rule to be in doubt in any precise manner, as has been found to be a factor that may show reopening. For example, in *Edison Electric Institute v. EPA*, 996 F.2d 326, 330 (D.C. Cir. 1993), the agency issued a notice of proposed rulemaking that both discussed "concerns that some legitimate [use] technically may be prohibited [by the existing rule]" and requested "comment on alternative approaches" regarding the regulation, providing specific substantive examples for comment. By contrast, the *ANPRM* did not suggest a similar level of commitment of agency resources had occurred, but at most indicated that a substantive proposal for review might follow consideration of "public input on what, if any, revisions in light of *SWANCC* might be appropriate to the regulations," 68 Fed. Reg. at 1992, including "comment on the use of the factors" in the 1986 rule, *id.* at 1994.

Third, the fact that the *ANPRM* neither offered a proposed rule nor "h[eld] out the unchanged section as [such], offering an explanation for its language, [and] soliciting comments on its substance," also weighs against a reopening. *See Am. Iron & Steel Inst. v. EPA*, 886 F.2d 390, 397-98 (D.C. Cir. 1989) (citing *State of Ohio*, 838 F.2d at 1328). The *ANPRM* anticipated only that the Corps might "develop [a] proposed regulation[]." 68 Fed. Reg. at 1991. In other words, the *ANPRM* was no more than a broadly stated request for information and comment in light of a recent judicial opinion. *Id.* at 1994. Although "a specific modification proposal" is not a prerequisite for a reopening, *Nat'l Ass'n of Reversionary Property Owners v. Surface Transp. Bd.*, 158 F.3d 135, 142 (D.C. Cir. 1998), the *ANPRM* did not purport to represent the Corps' considered reevaluation and updated judgment on the substance of the 1986 rule. Instead it sought information so that the Corps would be in a position to make substantive decisions about how to proceed after considering the responses. Specifically, the submitted comments would be used by the Corps "to determine the issues

8

to be addressed and the substantive approach for a future proposed rulemaking." 68 Fed. Reg. at 1991. Publishing the *ANPRM* was comparable to requesting comment on a petition for commencement of a rulemaking as the Corps "has itself said nothing on the merits." *See Nat'l Mining*, 70 F.3d at 1351. Viewed from the starting point, then, the *ANPRM* did not represent the Corps' reconsideration of the definition in the 1986 rule but an effort to gather information so that the Corps could better assess whether *SWANCC* required it to modify the definition.

Fourth, the December 2003 Press Release was not "the consummation of the [Corps'] decisionmaking process," Appellants' Br. at 24, as would constitute a final agency action taken to reaffirm the existing rule. Assuming that a press release could suffice, it must serve as a "promulgation" that embodies the agency's resolution of its reexamination of a rule and constitutes sufficient new agency action to restart the limitations period. *Gen. Motors*, 363 F.3d at 450 (citing *CropLife Am. v. EPA*, 329 F.3d 876, 884 (D.C. Cir. 2003); *Edison Elec.*, 996 F.2d at 331-32); *see Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C. Cir. 1997); *Pub. Citizen*, 901 F.2d at 151. The Press Release stated only that the Corps had decided "not [to] issue a new rule on federal regulatory jurisdiction over isolated wetlands," and instead, "to continue our efforts to ensure that the Corps' regulatory program is as effective, efficient and responsive as it can be." 2003 Press Release at 1. It made no mention of a reexamination of the 1986 rule by the Corps, much less offered any rationale for reaffirming the rule. In asserting that the Corps would "preserve the federal government's authority to protect our wetlands," "continue to monitor implementation of this important program to ensure its effectiveness," and "reaffirm[] federal jurisdiction over the majority of wetlands not impacted by the [*SWANCC*] decision," *id.*, the Press Release had none of the indicia of a specific

9

statement explaining the agency's reasoning for retaining a particular rule or of new final action taken regarding any existing rule.  It neither responded to comments nor presented new justifications for retaining the 1986 rule, as in *CTIA-The Wireless Ass'n v. FCC*, for example, where the agency "offer[ed] two new justifications [for the rule] not found in [prior orders]" that "constituted the [agency's] first legal rationales for its action to date."  466 F.3d 105, 112 (D.C. Cir. 2006); *see Bluewater Network v. EPA*, 370 F.3d 1, 17 (D.C. Cir. 2004); *PanAmSat Corp. v. FCC*, 198 F.3d 890, 897 (D.C. Cir. 1999); *State of Ohio*, 838 F.2d at 1328.  The Press Release also provided no insight into whether the Corps had rethought the policy underlying the 1986 rule.  *See Nat'l Mining*, 70 F.3d at 1351.  Indeed, the contents of the Press Release might indicate that the Corps simply concluded that the administrative costs of a rulemaking proceeding outweighed any potential gains.  Viewed from the end point, then, the Press Release was silent with respect to any substantive Corps decision in the nature of a reconsideration.  *See Gen. Motors*, 363 F.3d at 450.  Were the court to view the absence of evidence of "renewed adherence," *Am. R.R.*, 846 F.2d at 1473, as sufficient to overcome a statute of limitations, P&V fails to suggest what limits would exist to bar stale claims.

Moreover, developing guidance on wetlands regulations further supports the conclusion that the 2003 Press Release did not constitute final agency action reopening the 1986 rule.  The *SWANCC* Guidance accompanying the *ANPRM* made clear that the Corps' jurisdictional determinations under the rule will be issued on a case-by-case basis with Headquarters' direct involvement. 68 Fed. Reg. at 1996, 1997-98.  It suggested that if "questions arise concerning CWA jurisdiction, the regulated community should seek assistance from the Corps . . . ."  *Id*. at 1996.  Serving mainly as a source of information on recent court decisions, the Guidance memorandum was not itself a decisional

10

document. *See id.* at 1996 n.1; *Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 227-28 (D.C. Cir. 2007). Four years later, the Corps offered guidance on *Rapanos v. United States*, 547 U.S. 715 (2006) (plurality), that essentially repeated the 2003 case-by-case advice and offered no further insight into how the Corps might apply the 1986 rule. Any evaluation of the Corps' CWA jurisdiction thus appears to be far from complete.

Under the circumstances, the *ANPRM* and the Press Release did not constitute final agency action reopening the 1986 rule. The Corps' statements in 2003 could hardly be more different from the situation in which an agency has announced that it would undertake substantive reconsideration of its regulations under specific circumstances – such as during a formal evaluation period with a set time and format – and then has done so. *See, e.g.*, *Edison Elec.*, 996 F.2d at 332; *Pub. Citizen*, 901 F.2d at 149, 151. The plain text of the *ANPRM* indicated that the Corps was considering its options and seeking information to assist it in deciding on the *possibility* of a *future* proposed rule, while in the meantime continuing to apply the 1986 rule on a case-by-case basis. The *ANPRM* was a preparatory step, antecedent to a potential future rulemaking, not itself a decision to reconsider the 1986 rule. The potential next step never occurred, as demonstrated by the Press Release and the open-ended guidance. The Corps' extension of the comment period and the volume of comments that the Corps stated it would carefully consider do not help P&V's argument, for an agency must be able to initiate a public dialogue without inadvertently reopening established precedent, or its communications with the public would be unnecessarily stifled. *See Gen. Motors*, 363 F.3d at 449, 453; *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004). Nonetheless, our conclusion that P&V's facial challenge to the 1986 rule is untimely does not immunize the rule from all challenge: If the Corps applies the rule to P&V's property, or denies its petition to amend or

11

rescind the rule, then P&V would be able to challenge the rule notwithstanding that the limitations period has run. *See Cellular Telecomms. & Internet Ass'n v. FCC*, 330 F.3d 502, 508 (D.C. Cir. 2003); *NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 195-96 (D.C. Cir. 1987).

Accordingly, we affirm the dismissal of P&V's facial challenge to the 1986 rule for lack of subject-matter jurisdiction, rather than for failure to state a claim. *See* FED. R. CIV. P. 12(b)(1). The court has long held that section 2401(a) creates "a jurisdictional condition attached to the government's waiver of sovereign immunity." *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987) (citing *United States v. Mottaz*, 476 U.S. 834, 841 (1986); *Soriano v. United States*, 352 U.S. 270, 276 (1957)); *see Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 366 (D.C. Cir. 1993); *cf. Nat'l Mining*, 70 F.3d at 1350. On appeal, neither P&V nor the Corps has challenged this circuit's precedent; therefore, we need not question our prior authority. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (*en banc*). Consequently, the court has no occasion to address potential implications of recent Supreme Court decisions,[2] and no need to reach the Corps' alternative objection that P&V lacks standing.[3]

---

[2] *See, e.g.*, *Felter*, 473 F.3d at 1260 (dictum) (citing *Irwin*, 498 U.S. at 95-96; *Harris*, 353 F.3d at 1013 n.7 (dictum)); *see also John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750, 755-56 (2008) (Breyer, J., for the majority); *id.* at 760-61 (Ginsburg, J., dissenting); *Bowles v. Russell*, 127 S. Ct. 2360, 2365-66 (2007).

[3] *Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584 (1999); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).